No. 76,097

BOARD OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, KANSAS, *et al.*, *Appellants*, v. McGRAW FERTILIZER SERVICE, INC., *Appellee*, and BOARD OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, KANSAS, *et al.*, *Appellants*, v. GEIGER READY-MIX CO., INC., *Appellee*.

933 P.2d 698

Opinion filed March 7, 1997.

*William E. Waters*, of Division of Property Valuation, Kansas Department of Revenue, argued the cause and was on the briefs for appellant Director of Property Valuation.

*Keyta D. Kelly*, Leavenworth County Counselor, argued the cause and was on the briefs for appellant Board of County Commissioners of Leavenworth County.

*Carol B. Bonebrake*, of Cosgrove, Webb & Oman, of Topeka, argued the cause and was on the brief for appellee McGraw Fertilizer Service, Inc.

*Linda Terrill*, of Neill, Scott, Terrill & Embree, L.L.C., of Lenexa, argued the cause and was on the brief for appellee Geiger Ready Mix Co., Inc.

*Clarence D. Holeman*, assistant county counselor of Sedgwick County, was on the brief for *amicus curiae* Board of Sedgwick County Commissioners.

*Robert J. O'Connor* and *Dwight D. Dumler*, of Morrison & Hecker L.L.P., of Wichita, were on the brief for *amici curiae* certain Sedgwick County taxpayers.

The opinion of the court was delivered by

LOCKETT, J.: The Board of Leavenworth County Commissioners (County) and the Director of the Division of Property Valuation (Director) seek review of the Board of Tax Appeals' (BOTA) and the Leavenworth County District Court's construction of the valuation standard "retail cost when new" of art. 11, § 1(b), class 2 (E), of the Kansas Constitution implemented in K.S.A. 79-1439(b)(2)(E). BOTA and the district court held that the phrase "retail cost when new," as applied to the ad valorem taxation of

commercial and industrial machinery and equipment, does not include charges for installation, freight, and sales tax. In addition, the County and Director claim that the appeal of Geiger Ready-Mix Co., Inc., (Geiger) to BOTA should have been dismissed for lack of jurisdiction.

Appellees McGraw Fertilizer, Inc., (McGraw) and Geiger are taxpayers in Leavenworth County who own commercial and industrial personal property required to be valued by the county appraiser pursuant to class 2(E) as set forth in subsection (b) of art. 11, § 1 of the Kansas Constitution and as implemented by K.S.A. 79-1439(b)(2)(E). Under the applicable constitutional and statutory provisions, the county appraiser is required to determine the "retail cost when new" of commercial and industrial personal property. Guidelines prescribed by the Director require county appraisers to include sales tax and freight and installation costs in the "retail cost when new" of commercial and industrial personal property when valuing such property for property tax purposes.

In 1993, the County contracted with an outside auditor to review and audit the commercial and industrial personal property renditions of various taxpayers, including McGraw and Geiger, on a contingent fee basis. As a result of that audit, the County determined that "retail cost when new" included sales tax as well as expenses associated with freight and installation of various items of commercial and industrial property owned by both taxpayers. The County assessed additional tax and penalties.

McGraw disputed the amount of additional tax assessed and filed an Equalization Appeal of Property Value pursuant to K.S.A. 79-1448 with BOTA. BOTA converted the equalization of tax appeal to a protest of payment of tax action pursuant to K.S.A. 79-2005. Following an evidentiary hearing, BOTA issued an order concluding that "add-on costs incurred by the consumer after the retail price is paid (such as sales tax, installation, and freight charges to the ultimate destination), are not included in the 'retail cost when new.'" The County filed a petition for reconsideration, which BOTA denied. The County appealed to the district court pursuant to K.S.A. 74-2426(c)(4).

In a separate action, Geiger also disputed the additional amount of tax assessed. The auditor claimed Geiger owed taxes of $50,000. Although not completely clear from the record, it appears Geiger filed both a tax protest and a tax grievance with BOTA. Geiger raised numerous issues, but not the issue of the interpretation of the phrase "retail cost when new." During the grievance proceeding, the County was granted permission to brief other legal issues, including the interpretation of the phrase "retail cost when new." On April, 5, 1995, BOTA, as in the McGraw action, again concluded that "add-on costs incurred by the consumer after the retail price is paid (such as sales tax, installation, and freight charges to the ultimate destination), are not included in the 'retail cost when new.' " In addition, BOTA determined that Geiger did not owe the County $50,000; instead, Geiger was entitled to a $4,000 refund.

The County appealed both BOTA orders to the district court. The district court consolidated the appeals and allowed intervention of the Director. The district court then affirmed BOTA's interpretation that the phrase "retail cost when new" did not include add-on costs for sales tax, freight, and installation. The County and the Director appealed, and the appeal was transferred to this court. This court granted certain Sedgwick County taxpayers and the Board of Sedgwick County Commissioners permission to file *amicus curiae* briefs. The Sedgwick County taxpayers presently have appeals pending in the Court of Appeals raising the issue of the interpretation of the "retail cost when new" standard.

## STANDARD OF REVIEW

The County and the Director argue that BOTA "erroneously interpreted or applied the law." See K.S.A. 77-621(c)(4). BOTA is the highest administrative agency on property tax matters. BOTA has the power and authority to exercise its judgment anew and independent of the Director in determining the assessment of state assessed property. See *Mobil Pipeline Co. v. Rohmiller*, 214 Kan. 905, 920, 522 P.2d 923 (1974). BOTA orders are subject to judicial review under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* K.S.A. 74-2426(c). Here,

we are not asked to interpret a statute. We are required to interpret the Kansas Constitution.

In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers (the legislature) and the adopters (the voters) of that provision. *State ex rel. Stephan v. Finney*, 254 Kan. 632, 654, 867 P.2d 1034 (1994). A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to persons of common understanding. 254 Kan. at 654; *Colorado Interstate Gas Co. v. Board of Morton County Commr's*, 247 Kan. 654, 660, 802 P.2d 584 (1990). Words in common usage are to be given their natural and ordinary meaning in arriving at a proper construction. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 635, 694 P.2d 462 (1985).

There are well-established rules of construction applicable to tax matters. The power to levy taxes is inherent in the power to govern, but the exercise of that power is dependent upon the existence of legislation designating the kinds of property to be taxed. Nothing is taxable unless clearly within the grant of the power to tax. See *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.*, 229 Kan. 511, 512, 625 P.2d 494 (1981). The right to tax is penal in nature, and this right must be strictly construed in favor of the taxpayer. *J.G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, 500, 680 P.2d 291 (1984). Tax statutes will not be extended by implication beyond the clear import of the language employed therein; their operation will not be enlarged so as to include matters not specifically embraced. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984). Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer. *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs*, 228 Kan. 595, 597, 618 P.2d 1176 (1980).

## JURISDICTION

For the first time on appeal, the Director argues that BOTA had no jurisdiction, pursuant to K.S.A. 79-1702, to consider the property valuation issues raised by Geiger because no clerical error was

alleged and the taxes were not paid in protest as provided by K.S.A. 79-2005. The Director asserts Geiger's grievance should be remanded to the district court with instructions to vacate BOTA's order for lack of jurisdiction. We note that even if Geiger's protest was dismissed for lack of jurisdiction because the Director has not challenged McGraw's protest, the question presented requires a decision of this court.

Although it is not totally clear from the record, it appears that Geiger paid its disputed taxes under protest *and* filed a tax grievance covering the identical issues raised in the protest. Since Geiger paid the disputed taxes under protest, BOTA had jurisdiction to consider Geiger's appeal.

### "RETAIL COST WHEN NEW"

In Kansas, only "tangible" personal property is taxable for ad valorem purposes. Kan. Const. art. 11, § 1. Under Kansas law, "personal property" includes "every tangible thing which is the subject of ownership, not forming part or parcel of real property." K.S.A. 79-102. "Tangible" is not defined in the tax statutes, but this court has adopted the view that "tangible" is " 'descriptive of such things as have an objective, material existence; perceptible by the senses of sight and touch; possessing a real body.' " *In re Tax Protest of Strayer*, 239 Kan. 136, 142, 716 P.2d 588 (1986) (quoting Black's Law Dictionary 310 [5th ed. 1979]).

In 1985, the Kansas Legislature adopted House Concurrent Resolution 5018, which was submitted to the voters in the 1986 general election as a proposed amendment to art. 11, § 1 of the Kansas Constitution. The amendment changed the uniform and equal rate of assessment and taxation standard of the Kansas ad valorem taxation system and substituted a classification system. The subsection of the amended provision dealing with the classification of commercial and industrial equipment changed the concept of "fair market value" to "retail cost when new." Under art. 11, § 1(b), class 2 (E), of the Kansas Constitution, commercial and industrial property is to be valued at its "retail cost when new." The relevant section of art. 11 provides:

"Article 11. — FINANCE AND TAXATION .

"§ 1. (a) **System of taxation; classification; exemption.** The provisions of this subsection (a) shall govern the assessment and taxation of property until the provisions of subsection (b) of this section are implemented and become effective, whereupon subsection (a) shall expire. The legislature shall provide for a uniform and equal rate of assessment and taxation, except that the legislature may provide for the classification and the taxation uniformly as to class of motor vehicles, mineral products, money, mortgages, notes and other evidence of debt or may exempt any of such classes of property from property taxation and impose taxes upon another basis in lieu thereof. All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation.

"(b) **System of taxation; classification; exemption.** (1) The provisions of this subsection (b) shall govern the assessment and taxation of property on and after January 1, 1989, and each year thereafter. Except as otherwise hereinafter specifically provided, the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation. The provisions of this subsection (b) shall not be applicable to the taxation of motor vehicles, except as otherwise hereinafter specifically provided, mineral products, money, mortgages, notes and other evidence of debt and grain. Property shall be classified into the following classes for the purpose of assessment and assessed at the percentage of value prescribed therefor:

. . . .

"Class 2 shall consist of tangible personal property. Such tangible personal property shall be further classified into six subclasses, shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:

. . .

"(E) Commercial and industrial machinery and equipment which, if its economic life is seven years or more, shall be valued at its retail cost when new less seven-year straight-line depreciation, or which, if its economic life is less than seven years, shall be valued at its retail cost when new less straight-line depreciation over its economic life, except that, the value so obtained for such property, notwithstanding its economic life and as long as such property is being used, shall not be less than 20% of the retail cost when new of such property ....................................................................................20%."

K.S.A. 79-1439(b)(2)(E), which was later enacted and follows the constitutional provision verbatim, requires the appraiser to use the "retail cost when new" of an item as the starting point when appraising commercial and industrial machinery and equipment.

## A. Decisions Below

Does the phrase "retail cost when new" include variable add-on (post-acquisition) amounts for sales tax, freight and installation? To understand BOTA's ruling on this issue, BOTA's analysis in its March 15, 1995, decision is quoted in detail:

"11. The above referenced constitutional provision and statute does not define what it means by 'retail cost when new.' We have found no Kansas case law attempting to provide a definition. The Board notes, however, that there are other tax statutes that refer to what is included in the word 'cost.' K.S.A. 79-3602, 79-3602a and 79-3602b of the Kansas Retailers' Sales Tax Act all define the term 'selling price' as: '. . . the total cost to the consumer exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer.' Thus, for sales tax purposes, total cost includes freight and transportation charges from retailer to consumer. Leavenworth County produced a memorandum from the Division of Property Valuation (PVD) dated March 25, 1993, adopting the sales tax definition for use in setting the ad valorem tax value of commercial personal property. County Exhibit #3. No authority or reasoning is provided by either the memorandum or the county as to why the sales tax definition is being adopted for ad valorem tax purposes.

"12. When a specific section of a tax statute does not provide a definition, there is some authority to look to other taxation sections within Chapter 79 of the Kansas Statutes Annotated for guidance. The Kansas Supreme Court examined this technique for ascertaining definitions within a legislative package such as Chapter 79. *First Page, Inc. v. Cunningham*, 252 Kan. 593, 600, 847 P.2d 1238 (1992). However, the Board notes that the high court (while not disapproving) did not specifically approve the use of this technique in interpreting Kansas statutes.

"13. The Board is reluctant to use the *First Page* technique to apply definitions found in the Kansas Retailers' Sales Tax Act to the statutes regarding ad valorem property tax. While both are found in chapter 79 of the Kansas statutes, these two kinds of taxes have distinctly different characteristics and purposes. The sales tax is a tax on the privilege of engaging in the business of selling tangible personal property at retail in this state, and is levied on the gross receipts of sales transactions. K.S.A. 70-3603. Ad valorem property taxes, on the other hand, are taxes on the ownership of property and are levied on the value of property. Kan. Const. Art. 11, Sec. 1(a) and K.S.A. 79-1439 both state that commercial equipment shall be *valued* at its 'retail cost when new.' One is a tax on the transaction and the other a tax on the value of the item sold. It does not follow that what is included in one must also be included in the other. It is not clear to this Board that charges added to the retail price for freight, installation and particularly for sales tax are

related to the value of the product sold. Therefore, the Board finds that the definition of 'sales price' for retail sales tax purposes is not the same as, and is not an appropriate definition for, 'retail cost when new' as applied to ad valorem taxation of commercial personal property.

"14. Another troublesome feature of the proposition that freight, installation and sales tax be included in the 'retail cost when new' for calculating ad valorem property taxes is that ad valorem taxes must be based on valuations that are uniform and equal. For example, suppose two companies, A and B, purchase the same piece of equipment with a retail cost of $1,000. Taxpayer A has the equipment delivered by the same company they bought it from for a delivery fee of $75. Added to the $1,075 is a sales tax of 6.5% for a total of $1,144.87. Company B, on the other hand, purchases the equipment from an out-of-state firm (thus paying no Kansas sales tax) and pays a third party to ship the equipment. On January 1 (and every year thereafter for the life of the equipment), Taxpayer A (cost = $1,144.87) would have a higher valuation than B (cost = $1,000) for the exact same item, purchased on the same day and for the same sale price.

"15. There are no Kansas cases directly on point. A review of case law from other jurisdictions since 1980 shows very little litigation on the issue at hand. What few cases were found have decided that the term 'cost,' when used for valuation of personal property for ad valorem taxation purposes, included all costs actually paid by the consumer. This includes installation costs *Crown Cork and Seal Co., Inc. v. South Carolina Tax Commission*, 394 S.E. 2d 315 (S.C. 1990); current data, transportation and set up costs, *IBM Credit Corporation v. Board of County Commissioners of the County of Jefferson*, 870 P.2d 535 (Colo. App. 1993); the foregoing, as well as the price of the asset, site preparation and sales tax. *Xerox Corp. v. County of Orange*, 136 Cal. Rptr. 583 (1977); and *State Department of Assessments and Taxation v. Metrovision of Prince George's County, Inc.*, 607 A.2d 110 (Md. App. 1992). Critical to the reasoning in these cases was the law in these jurisdictions that the sales tax was a direct obligation of the retailer. As such, it was just another cost passed on to the consumer. Kansas statutes require a different result.

"16. In Kansas, the sales tax is by statute not a cost to the retailer. K.S.A. 79-3604 provides that the sales tax shall be paid by the consumer; that sales tax shall be a *debt* from consumer to retailer; and that it is recoverable at law in the same manner as other debts. If the sales tax is not paid by the consumer, the director of taxation may proceed directly against the *consumer* to collect the full amount of the tax due. This statute has two important applications to the issue at hand. First, the Kansas sales tax is not a cost to the retailer which can be considered as simply another cost of doing business which is passed on to the consumer. Second, the Kansas sales tax is, by statute, a 'debt' from the consumer to the retailer. K.S.A. 79-3604. In Kansas, 'Money, notes and other evidence of debt are . . . exempt from all ad valorem and other property taxes levied under the laws of the state. . . .' By defining sales

taxes as a 'debt' of the consumer, our statutes have specifically exempted sales taxes from ad valorem taxation.

"17. This Board understands and agrees that all costs passed on to the consumer in *setting* the retail price are to be included in the valuation of personal property. These costs will appropriately include intangibles such as import and export taxes, excise taxes, freight, labor, commissions, advertising and other overhead expenses. However, the Board also sees a point at which amounts paid by a consumer are beyond the retail cost of the item being purchased. The cost new to a consumer of an item with a retail price of $100.00, for example, can reasonably be construed to be $100.00. Such a cost includes all the costs of production and marketing as well as a profit to producers and retailers. It is not at all clear that additional costs paid after the retail price has been paid by the consumer should also be included in the words 'retail cost when new.' All costs contributing to the retail price are part of the value of an item. Add-on costs incurred by the consumer after the retail price has been paid, however, have less to do with the value of the item and more to do with how and where the consumer is going to use the item. As long as these add-on costs are separately listed and readily discernible from the actual retail price of the item, there is no reason why these add-on costs cannot also be separated from the 'retail cost when new' in determining ad valorem tax values.

"18. The analysis in the previous paragraph is supported by Kansas tax statutes. The Board notes that the Kansas Retailers' Sales Tax Act defined the term 'selling price,' in part, as '. . . the total cost to the consumer. . . .' K.S.A. 79-3602, 79-3602a, 79-3602b. In explaining 'total cost to the consumer,' the above referenced statutes continue with these words: '. . . exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer.' Id. The first thing the Board takes from this statutory language is that the legislature must have understood the words 'total cost to the consumer' to not include freight and transportation costs; otherwise, there would have been no reason to specifically add these costs to the definition. The second thing the Board takes from the statutory language is that the legislature knows how to include the cost of freight and transportation in the words 'total cost to the consumer.' It did so in the Retailers' Sales Act. No such language can be found in the property valuation statutes. K.S.A. 79-1439 provides that commercial machinery and equipment is to be valued at its '. . . retail cost when new . . . .' In this statute, the legislature declined to include the cost of freight and transportation, as it had done in the sales tax act. The Board will not read into statutes words that are not there.

"19. As the Board considers this matter, it does so with the knowledge that strict construction is required as tax statutes are considered penal in nature. *In re Tax Protest of Strayer*, 239 Kan. 136, 141, 716 P.2d 588 (1986). One of the effects of strict construction is that:

'Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it.' *In re Tax Appeal of Atchison, Topeka & Santa Fe Railway Company*, 17 Kan. App. 2d 794, Syl. ¶ 5, 844 P.2d 756 (1933).

Another effect of strict construction is that: 'If there is a reasonable doubt about the meaning of a taxing act, it will be construed most favorably to the taxpayer.' *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, Syl. ¶ 4, 845 P.2d 57 (1992).

"20. For all the reasons stated above, the Board finds that add-on costs incurred by the consumer after the retail price is paid, (such as sales tax, installation and freight charges to the ultimate destination), are not included in the 'retail cost when new.' When separately listed so that they can be readily discerned from the actual retail price, these add-on costs should not be included in the tax valuation of commercial machinery and equipment."

It is noteworthy that this decision is contrary to BOTA's prior position on the issue. In *In the Matter of the Protest of Wickham Industries, Inc.*, Docket No. 88-3202-PR (June 14, 1989), BOTA ruled that the county appraiser had properly included freight and installation as a portion of the taxpayer's cost of personal property. In *In the Matter of the Protest of Northrock Lanes, Inc.*, Docket Nos. 88-6075-PR and 90-8223-PR (December 4, 1991), BOTA, relying on *Wickham*, ruled that sales tax, freight, and installation costs were assessable. The *Northrock* decision relied upon the Director's guidelines, which stated that sales tax, freight, and installation costs were to be included. However, in deciding *Wickham* and *Northrock*, BOTA did not undertake the depth of analysis subsequently undertaken in *McGraw* and *Geiger*.

The BOTA ruling in the *McGraw* case included a dissent. The dissent was premised, in part, on the Kansas Retailers' Sales Tax Act's definition of "selling price" as "the total cost to the consumer exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer." K.S.A. 1996 Supp. 79-3602(g). The dissent found no difference between the terms "selling price" and "retail cost when new." The dissent relied

upon case law from other jurisdictions in concluding that the term "cost," when used for valuation of personal property for ad valorem tax purposes, includes all costs actually paid by the consumer. It reached this conclusion even though the other jurisdictions had not adopted Kansas' "retail cost when new" standard.

The Leavenworth County District Court, in affirming BOTA, did not engage in lengthy analysis, but stated in part:

"In my judgment, and this is my decision, ["retail cost when new" is] the amount necessary to acquire the property itself. It does not include incidental and optional charges for services in connection with the purchase of the item, such as freight and installation charges. And it, likewise, does not include sales tax. That is not a cost of the item; it is something that must be paid to acquire the item, but not a cost which is inherent in the item. It is not a common and understood item which would be included in what an ordinary person would understand an item to cost. If you consider, What does a television set cost?, you may say $375. You would not consider that cost to include sales tax.

"I do find, as well, that the opinion and the briefs which distinguish sales tax and note that it is considered in Kansas law as a debt and not a part of the value of property to be persuasive in that regard." *Board of County Commr's of Leavenworth County, Kansas v. McGraw*, No. 9504CV238 (Jan. 17, 1996).

## B. Other Authority

The Director argues that BOTA's interpretation that "retail cost when new" of commercial and industrial machinery and equipment does not include taxes, freight, and installation charges is erroneous as a matter of law. The Director's point is that to "men of common understanding," the term "cost" means "total acquisition cost" to the consumer. The Director bases this contention upon the fact that the total acquisition cost of commercial and industrial machinery and equipment for accounting, federal income tax, and appraisal purposes includes sales tax as well as freight and installation charges. For authority, the Director relies upon I.R.S. Publication 551, Basis of Assets (1994); International Association of Assessing Officers (I.A.A.O.), Standard on Valuation of Personal Property § 7.2.1. (1985); and Kieso & Weygandt, Intermediate Accounting 446 (6th ed. 1989); and Accounting Research Bulletin No. 43 (published by the Committee on Accounting Procedure).

I.R.S. Publication 551, Basis of Assets, p. 2, states that sales tax, freight, and installation charges are included in the basis of an asset

for federal income tax purposes. The Director and the County argue that because freight and installation charges may be included in the cost basis of an asset and depreciated for federal income tax purposes, such charges must be included as state tangible personal property. BOTA properly found there was no similarity between "cost basis" for federal income tax purposes and the Kansas valuation standard "retail cost when new."

*Amici curiae* Sedgwick County taxpayers argue that depreciation allows the taxpayer to recover the total cost of acquiring and installing the asset by making allocations of this total cost to the tax periods benefitted over the useful life of the asset. However, a difference exists between the function of "cost basis" for federal income tax purposes and "retail cost when new" for Kansas ad valorem tax purposes. The fact that freight and installation charges may be capitalized and depreciated for federal tax purposes does not render such charges tangible property for purposes of Kansas ad valorem taxation. Freight and installation are depreciated not because they are tangible property, but because they benefit the taxpayer over more than one year.

The I.A.A.O., Standard on Valuation of Personal Property § 7.2.1., provides that "total acquisition costs including freight, installation, taxes and fees" are included in the basis of a depreciable asset for purposes of appraisal. Again, this standard relates to the broader term "total acquisition cost" when determining fair market value and not "retail cost when new."

Kieso & Weygandt, Intermediate Accounting 446 and Accounting Research Bulletin No. 43 are not included in the record, and the court has not located these publications. However, it is unlikely that an accounting term has relevance in defining the term "retail cost when new." In the absence of evidence of legislative intent regarding the meaning of "retail cost when new," the court construes the words based upon what the words imply to persons of common understanding, not upon an accounting procedure.

I.R.S. publications, accounting research bulletins, and interpretations of the I.A.A.O. are not persuasive authority regarding "common understanding." Reliance upon these authorities is misplaced. It is highly unlikely that the Kansas Legislature intended the phrase

"retail cost when new" to be synonymous with "cost basis" or "total acquisition cost for fixed assets" as set forth in these publications.

*Amicus curiae* Board of Sedgwick County Commissioners urges that we rely on other jurisdictions which have held that freight, installation, and sales tax charges are an assessable component of the value of personal property. However, we have examined all of the cases cited by *amicus curiae* and found that they have no persuasive authority, since none of those jurisdictions possesses a valuation standard similar to the "retail cost when new" adopted by Kansas. See, *e.g.*, *Aptco Auto Auction v. City of Taylor and County of Wayne*, 1996 WL 172791 (Mich. Tax Tribunal) (case did not consider whether freight and installation charges are tangible property; court analyzed issue under statutes inconsistent with Kansas law); *Mack Aviation Company, Inc. v. Scott Noble, King County Assessor*, 1993 WL 558024 (Wash. Bd Tax. App.) (Washington utilizes "true and fair value in money" as its valuation standard, defined by case law as market value; standard valuation approach, which adds charges over and above market value, is inconsistent with the Kansas "retail cost when new" standard); *Department of Revenue of the State of Montana v. World Wide Press, Inc.*, 1992 WL 275722 (Mont. Tax. App. Bd.) (all taxable property must be assessed at 100% of its market value, which is what a willing buyer would pay a willing seller); *Connecticut Mutual Life Insurance Company v. City of Hartford*, 1996 WL 367778 (Conn. Super.) (court did not consider tax status of freight and installation charges; property valued at "present and true value," which is fair market value and not value at a forced sale or auction); *Xerox Corp. v. County of Orange*, 66 Cal. App. 3d 746, 136 Cal. Rptr. 583 (1977) (property valued at "full value," defined as "fair market value, full cash value, or other such value standard" prescribed by California Constitution).

While various theories of market value appraisal have been used in other jurisdictions as a rationalization for considering components of expense such as freight and installation charges and sales tax, this does not dictate the same result in Kansas where "retail cost when new" has replaced "fair market value." No other taxing jurisdiction in the United States, including the I.R.S., uses the ter-

minology "retail cost when new." This term is unique to the State of Kansas. It is not the equivalent of "fair market value," "cost basis for federal income tax purposes," "cost basis for accounting purposes," or "cost approach to fair market value." The phrase "retail cost when new" contains words which are commonly used and understood. Persons of common understanding would not expect to have to refer to definitions utilized by other states and the I.A.A.O. and I.R.S. to arrive at a definition of the term. Based upon this analysis, statutory definitions and case law from other jurisdictions are not persuasive.

### C. Legislative Inaction

Next, appellants argue that "retail cost when new" must include freight and installation charges as well as sales tax because the Kansas Legislature has considered but declined to define "retail cost when new" to exclude sales tax, freight, and installation. We note that House Bills 2108 and 2655, introduced in the House Committee on Taxation during the 1995 and 1996 sessions of the legislature, contained the following language:

"[F]or purposes of class 2(E) of subsection (b) of section 1 of article 11 of the Kansas Constitution, 'retail cost when new' shall mean the total cost to the consumer [purchaser] less the amount of any transactional taxes, installation costs and freight or transportation charges included in such cost."

In the 1995 session, this language was included in a proposed amendment relating to the exemption of certain business machinery and equipment from property taxes. While portions of the bill were subsequently enacted into law, the language was dropped from the amendment. In 1996, the language was added to a proposed amendment exempting personal property items costing $250 or less. This 1996 bill died in committee. There is little legislative history to provide guidance to the court as to why this provision was dropped from the 1995 amendment. With respect to the 1995 bill, a report from the Kansas Legislative Research Department attached to the subcommittee report of the Minutes of House Committee on Taxation, March 13, 1995, approved March 31, 1995, stated in part:

"Since the bill would define 'retail cost when new' to exclude transactional taxes, installation costs, and freight or transportation charges for purposes of the bill and for purposes of the subclass of commercial and industrial machinery and equipment in the Kansas Constitution, is it appropriate for the Legislature to attempt to define 'retail cost when new' for purposes of the Kansas Constitution when a court might find that the people of Kansas thought the term meant something different when the classification amendment was adopted?

"How might a court interpret what the people of Kansas thought the term meant, since—according to testimony from appraisers—the IRS and IAAO both include the taxes, installation and transportation costs in their definitions."

The Director argues that by failing to enact these bills into law, the legislature intended to acquiesce in the Director's interpretation that "retail cost when new" includes sales taxes, freight, and installation charges. The Director cites no authority for the proposition that the legislature's inaction was due to its acquiescence in the Director's interpretation of the Kansas Constitution. As Mc-Graw states in its brief, the court can draw many contradictory inferences from the legislature's failure to pass these bills, including the fact that the legislature was aware of BOTA's order of March 15, 1995, interpreting the provision.

It is important to note that the essential difference between a constitutional provision and a statute is that a constitutional provision usually states general principles or policies, and establishes a foundation of law and government, whereas a statute must provide the details of the subject of the statute. A constitution, unlike a statute, is intended not merely to meet existing conditions but to govern future contingencies. When a question of interpretation of the Kansas Constitution arises, it is the function and duty of this court to define constitutional provisions. *State ex rel. Stephan v. Finney*, 254 Kan. 632, Syl. ¶¶ 2, 4, 867 P.2d 1034 (1994). Based upon these stated principles, we find that the more likely inference from the statement in the attachment to the Minutes of the House Committee on Taxation, "How might a court interpret what the people of Kansas thought the term meant, since—according to testimony from appraisers—the IRS and IAAO both include the taxes, installation and transportation costs in their definitions," is that the legislature decided that interpretation of the constitutional provision was a judicial and not a legislative function.

## D. Uniform and Equal Clause

This court has stated: "Uniformity in taxation implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of valuation. Uniformity in taxation does not permit a systematic, arbitrary, or intentional higher valuation than that placed on other similar property within the same taxing district." *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 127, 734 P.2d 1125 (1987). The Director contends that exclusion of freight, installation, and sales tax as an assessable component of "retail cost when new" violates the "uniform and equal rate of assessment and taxation" language of art. 11, § 1 of the Kansas Constitution. The Director maintains that its interpretation of "retail cost when new" is paramount and must be upheld, even if incorrect, because it is uniformly applied by the Division of Property Valuation through its appraisal guidelines.

By statute, the Director supervises work of all county appraisers and has the duty to publish personal property valuation guidelines. *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193, 199, 734 P.2d 1168 (1987); see K.S.A. 75-5105a. K.S.A. 75-5105a(b) grants authority to the Director to devise guidelines. However, that grant of authority is limited to guidelines showing "fair market value in money," not "retail cost when new." K.S.A. 75-5105a(b). In any case, the Director's authority to promulgate guidelines is not without limitation. As the Court of Appeals recognized in In *re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 867, 909 P.2d 673 (1995): "To be valid, a regulation must come within the authority conferred by statute, and a regulation which goes beyond that which the legislature has authorized or extends the source of its legislative power is void."

Further, although decisions of the Director are conclusive upon subordinate taxing officials, the power exercised by the Director is not judicial, and the question of whether assessment schedules promulgated by the Director conform to a statute is a question of law not finally determinable by the Director. *Garvey Grain, Inc. v. MacDonald*, 203 Kan. 1, 12, 453 P.2d 59 (1969).

The valuation guidelines published by Division of Property Valuation are valid only insofar as values achieved reach the consti-

tutionally mandated "retail cost when new" standard. The Director's reliance upon *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P.2d 315 (1963), and *Gordon v. Hiett,* 214 Kan. 690, 522 P.2d 942 (1974), is misplaced. Neither case stands for the proposition that a faulty valuation methodology which fails to achieve a constitutionally mandated standard should be upheld if the methodology is uniformly applied. As McGraw points out, this statement in *Gordon* suggests otherwise: "If, however, the taxing officials do not perform their duties in accordance with the law the issue presented to the court is not the exercise of administrative judgment, but the legality of their acts. [Citations omitted.]" 214 Kan. at 694.

Although the Director asserts that his interpretation of "retail cost when new" achieves uniformity by including sales taxes, freight and installation costs, we note that the opposite, or lack of uniformity, is more likely true. First, the record supports an inference that the Director has not applied the guidelines uniformly, having changed them over time to include sales tax at a later date. Second, the record does not indicate that all counties applied the guidelines uniformly. In addition, Kansas is a self-reporting state, K.S.A. 79-301 *et seq.,* and because private citizens do not receive the Director's directives, there is no evidence that all taxpayers reported freight, sales tax, and installation costs. Further, if the method of valuing tangible personal property results in variation in the valuation of identical or similar property based upon arbitrary factors that have no relationship to the tangible personal property's actual value, the appraisal is not uniform and equal. Freight, installation, and sales charges can be arbitrary and may vary depending on the distance to delivery or the nature and difficulty of the installation, and may vary from vendor to vendor for the same service. Identical pieces of property can be assessed at different values having nothing to do with the "retail cost when new" of the tangible property.

The constitutionally mandated uniformity is achieved by construing "retail cost when new " to exclude variable add-on amounts paid for intangible services and privileges after the purchase. As Geiger states:

"We can tell a merchant who buys the forklift for $20,000 from an out of state company, incurring a use tax of 4.9%, that the forklift will be taxed for ad valorem tax purposes at its 'retail cost when new' of $20,000, not $20,980. We can tell the merchant that buys the same forklift from an Overland Park dealer with a tax rate of 6.75%, that the forklift will be taxed at its 'retail cost when new' of $20,000, not $21,350. We can tell both of those companies that their 'retail cost when new' will be the same as the manufacturer that purchases the same $20,000 forklift sales tax exempt."

## E. Construction

Interpretation of a constitutional provision or a statute is a question of law. An appellate court's review of a question of law is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995); see *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

The legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *Todd v. Kelly*, 251 Kan. at 516. When a specific section of a constitution or a tax statute does not provide a definition, it may be possible to look to other taxation sections within Chapter 79 of the Kansas Statutes Annotated for guidance. As BOTA found, the court examined this technique in *First Page, Inc. v. Cunningham*, 252 Kan. 593, 600, 847 P.2d 1238 (1992), but did not specifically approve its use.

The technique of applying definitions found in the Kansas Retailers' Sales Tax Act to the statutes regarding ad valorem property tax does not apply here. K.S.A. 1996 Supp. 79-3602(g), of the Kansas Retailers' Sales Tax Act defines the term "selling price" as "the total cost to the consumer exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer." Thus, for sales tax purposes, total cost includes freight and transportation charges from retailer to consumer. The sales tax is a tax on the privilege of engaging in the business of selling tangible personal property at retail in this state, and is levied on the gross receipts of sales transactions.

Ad valorem property taxes, on the other hand, are taxes on the ownership of property and are levied on the value of property. While both the retailers' sales tax and ad valorem property tax provisions are found in chapter 79 of the Kansas statutes, the two types of taxes have distinctly different characteristics and purposes. One is a tax on the transaction, and the other a tax on the value of the item sold. Article 11, § 1(b)(1) of the Kansas Constitution and K.S.A. 1996 Supp. 79-1439 both state that commercial equipment shall be *valued* at its "retail cost when new." If the legislature had intended the phrase to always include freight and installation in the value of the item sold for ad valorem property taxes, it could have so specified when adopting House Concurrent Resolution 5018 for submission to the voters.

## CONCLUSION

### Sales Tax

In Kansas, the sales tax is by statute not a cost to the retailer. Sales taxes are a governmental charge for the privilege of acquiring property and do not increase the value to the property purchased. K.S.A. 1996 Supp. 79-3604 provides that the sales tax shall be paid by the consumer, shall be a debt from the consumer to the retailer, and shall be recoverable at law in the same manner as other debts. If the sales tax is not paid by the consumer, the Director of Taxation proceeds directly against the consumer to collect the tax due. This statute has an important application to the issue at hand. Because the Kansas sales tax is, by statute, a "debt" from the consumer to the retailer, the tax is not a cost to the retailer which can be considered as simply another cost of doing business. K.S.A. 79-3604. By defining sales taxes as a "debt" of the consumer, our statutes have specifically exempted sales taxes from ad valorem taxation. In Kansas, "Money, notes and other evidence of debt are . . . exempt from all ad valorem and other property taxes levied under the laws of the state of Kansas." K.S.A. 79-3109c. Therefore, sales tax is never included in determining "retail cost when new."

### Freight and Installation Charges

Because the legislature has not defined "retail cost when new"

to include freight and installation charges, in order to determine the common understanding of these common words, it is proper to examine the ordinary dictionary definitions of the words.

"Retail" is defined as "[t]he sale of goods in small quantities to consumers."

"Cost" is defined as "[a]n amount paid or to be paid for a purchase."

"New" is defined as "[h]aving existed or been made for only a short time," "[n]ot yet old" or "[n]ever used before."
Webster's II New Riverside University Dictionary 1003, 316, 792 (1988).

The analytical process for determining whether tangible personal property is taxable is set out in *In re Tax Protest of Strayer*, 239 Kan. 136, 716 P.2d 588 (1986). In *Strayer*, this court was required to determine whether a computer software program was taxable by virtue of being tangible personal property. 239 Kan. at 141-42. The taxpayer had asserted that computer software is intangible and not taxable. The *Strayer* court first observed that there were two types of computer software programs, operational and application. The *Strayer* court recognized that operational computer software programs, "without which a computer cannot operate, have value that is to be considered as essential portion of the computer hardware and are therefore taxable as tangible personal property in conjunction with the hardware." 239 Kan. at 143. Application software, "those which are particularized instructions adopted for special programs, are intangible property." 239 Kan. at 143. This court held that (1) application programs which provided particularized instructions are intangible and not taxable and (2) operational software, without which a computer cannot operate, is an essential part of the computer's hardware and is taxable as tangible personal property. 239 Kan. at 143.

Applying the *Strayer* analysis, freight and installation costs are more similar to intangible than tangible property. They do not have value which becomes an essential portion of the tangible property. They are merely costs which may or may not be incurred to adapt the property to the taxpayer's particular use. Freight and installation charges are vendor charges for services provided to an owner

of personal property in connection with the owner's acquisition of the property. If an item of equipment is subsequently resold or otherwise disposed of, the charges incurred to transport and install the item have no value. They are merely the vendor's service charges for adapting the property to the taxpayer's particular use and never become an essential part of the tangible property.

Using these definitions and the *Strayer* analysis, we conclude that persons of common understanding would not believe that "retail cost when new" always includes charges for freight and installation, but rather would understand the term to refer to the sticker price of an item. It is doubtful that, when approving art. 11, § 1(b), Kansas voters intended that the valuation starting point for new commercial and industrial machinery and equipment would include charges for intangible services such as freight and installation. It is more likely that Kansas voters understood the phrase "retail cost when new" to mean the price paid for the tangible personal property being purchased. They did not intend that the "retail cost when new" would change depending upon how the purchaser used the equipment or whether the purchaser used his or her own labor force for transportation and installation.

All costs normally passed on to the consumer in setting the retail sales price are to be included in the valuation of personal property.

Although costs contributing to the retail price are part of the value of an item, add-on costs incurred separately by the consumer after the retail price has been set have less to do with the value of the item and more to do with how and where the consumer is going to use the item. As long as these add-on costs are charged separately and are readily discernible from the actual sales price of the item, they are based on a separate contract for services and should not be included in the "retail cost when new" in determining ad valorem tax values. For example, if A purchases a television set for $100, and then has the seller deliver and install the television set for a separate charge of $50, although the total cost to the purchaser is $150, the "retail cost when new" for purposes of ad valorem taxation is $100. Applying the well-established principle of common understanding to the phrase "retail cost when new," we find that the phrase does not always include the addition of

freight and installation charges to the purchase price for purposes of ad valorem taxation.

BOTA and the district court correctly determined that the valuation standard "retail cost when new" never includes the sales tax of an item. However, "retail cost when new" may include charges for freight and installation.

Affirmed as modified.