(962 P.2d 1120)
Nos. 76,548
76,764

BOARD OF SEDGWICK COUNTY COMMISSIONERS, *Petitioner/Appellant*, v. DILLON STORES, *et al.*, *Respondent/Appellee*.

DILLON STORES, *et al.*, *Cross-Appellant*, v. BOARD OF SEDGWICK COUNTY COMMISSIONERS, *Cross-Appellee*.

Opinion filed July 31, 1998.

*Clarence D. Holeman*, assistant county counselor, for appellant/cross-appellee.

*Robert J. O'Connor* and *Dwight D. Dumler*, of Morrison & Hecker, L.L.P., of Wichita, for appellee/cross-appellant.

Before LEWIS, P.J., PIERRON, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: In 1990, the Sedgwick County Appraiser began a series of personal tax audits designed to discover personal property which had "escaped taxation." One of the audits conducted was of the Dillon Stores (taxpayer). When that audit was completed and the information was computed, the total amount assessed to the taxpayer for the years 1986 to 1992 was approximately $2.9 million. The case has arrived at this juncture by way of an appeal and cross-appeal from the order of the trial court, which affirmed the order of the Board of Tax Appeals (BOTA). We note that both BOTA and the trial court adopted positions taken by the taxpayer, and Sedgwick County (County) has appealed from the decisions of BOTA and the trial court. The taxpayer has cross-appealed.

This is the second time these same parties and the same issues have been presented to this court. For reasons that should become apparent, we first need to review the procedural complexities of this lawsuit.

The taxpayer's first action was case No. 93-C-307, filed in the district court of Sedgwick County. In that action, the taxpayer sought and received an injunction restraining the County from collecting from it any escaped personal property tax. This lawsuit also generally contested the assessment of the County on various grounds.

The trial judge in this case was Judge C. Robert Bell, who was assigned to try the first action, which we will refer to as *Dillon I*, and he made the following significant rulings:

(a) K.S.A. 79-1427a prohibits the collection of escaped taxes to the 4 years prior to the time of discovery.

(b) Discovery of escaped taxes does not take place until the County places the property on the tax rolls and bills the taxpayer.

The decisions of Judge Bell were appealed to this court by the County. In an unpublished opinion, we affirmed Judge Bell. *Dillon Stores v. Board of Sedgwick County Comm'rs*, No. 71,140, unpublished opinion filed July 28, 1995. In affirming Judge Bell, we agreed with his decision on discovery and on the statute of limitations.

The Supreme Court accepted review of our decision in *Dillon I* and reversed it on the grounds that the taxpayer had failed to exhaust its administrative remedies and, as a result, the court had no jurisdiction over the subject matter of the action. The Supreme Court reversed the trial court's order and remanded the case with instructions to dissolve the injunction. *Dillon Stores v. Board of Sedgwick County Comm'rs*, 259 Kan. 295, 912 P.2d 170 (1996).

While *Dillon I* was running its course through the courts of this state, another action, basically the same as the original action, was being considered by BOTA. This action was filed by the taxpayer with BOTA at the same time it filed case No. 93-C-307 in Sedgwick County. BOTA's decision in that case agreed with the taxpayer that escaped personal property tax was not discovered until the property was placed on the tax rolls.

BOTA's decision was appealed to the district court of Sedgwick County. Once again, the case was assigned to Judge Bell, and he disposed of *Dillon II* exactly as he had disposed of *Dillon I*. The decision of BOTA and of the trial court in *Dillon II* are the subject matters of the case now under consideration.

The specific facts on which this action is based are, as might be imagined, rather complex and mundane. Most of the facts are not essential to our decision, and we will address the facts only when necessary for an understanding of this opinion.

## FREIGHT, INSTALLATION, SALES TAX

One of the principal issues between the parties was whether the taxpayer was required to add freight, installation, and sales tax to its personal property for tax purposes. The County maintained that the new price of an item of personal property must include freight,

installation, and sales tax. The taxpayer argues just as strenuously that none of those three items should be considered when arriving at the new cost of property for its personal property tax purposes.

We conclude that this issue was resolved by a recent decision of the Kansas Supreme Court in *Board of Leavenworth County Comm'rs v. McGraw Fertilizer Serv., Inc.*, 261 Kan. 901, 933 P.2d 698 (1997). In addressing the very issue that is raised on this appeal, the Supreme Court said:

"Applying the well-established principle of common understanding to the phrase 'retail cost when new,' we find that the phrase does not always include the addition of freight and installation charges to the purchase price for purposes of ad valorem taxation.

"BOTA and the district court correctly determined that the valuation standard 'retail cost when new' never includes the sales tax of an item. However, 'retail cost when new' may include charges for freight and installation." 261 Kan. at 922-23.

The court supplied more detail in its holding about freight and installation, holding:

"All costs normally passed on to the consumer in setting the retail sales price are to be included in the valuation of personal property.

"Although costs contributing to the retail price are part of the value of an item, add-on costs incurred separately by the consumer after the retail price has been set have less to do with the value of the item and more to do with how and where the consumer is going to use the item. As long as these add-on costs are charged separately and are *readily discernible* from the actual sales price of the item, they are based on a separate contract for services and should not be included in the 'retail cost when new' in determining ad valorem tax values. For example, if A purchases a television set for $100, and then has the seller deliver and install the television set for a separate charge of $50, although the total cost to the purchaser is $150, the 'retail cost when new' for purposes of ad valorem taxation is.$100." 261 Kan. at 922. (Emphasis added.)

Further, the court addressed the constitutional issue by stating: "The constitutionally mandated uniformity is achieved by construing 'retail cost when new' to exclude variable add-on amounts paid for intangible services and privileges after the purchase." 261 Kan. at 918.

In the instant matter, BOTA ruled that all of the freight, installation, and sales tax costs should be removed from the calculation

of retail cost when new on the taxpayer's personal property. This holding was upheld by the district court.

This decision must be reversed. *McGraw* clearly holds that sales tax may never be included in the cost of an item for personal property tax purposes. On the other hand, the court in *McGraw* indicated that freight and installation costs "may" be included as part of the new price of an item for personal property tax purposes.

*McGraw* is controlling, and it requires that this action be remanded for factual determinations of the following:

(a) Of the taxable costs of the items of personal property involved, what part, if any, of that cost includes sales tax? The sales tax portion cannot be taxed again and must be removed from the cost for personal property tax purposes.

(b) What are the freight and installation costs included in the taxable base of the property and should they be removed or retained as part of the cost basis? The court in *McGraw* gave some guidelines for the resolution of this question, but it will depend on whether the costs are charged separately and are *readily discernible* on the actual sales price of the item.

## RES JUDICATA

To date, each time the issue of "when escaped property is discovered" has been considered on its merits, it has been decided in the same manner. The trial court, in *Dillon I*, held that discovery was on the date the property was placed on the tax rolls and the taxpayer was billed. This court affirmed that decision. Finally, BOTA reached that same conclusion, from which the County now appeals.

The County argues that in reaching its decision on "discovery," BOTA relied on Judge Bell's opinion in *Dillon I*. The County points out that Judge Bell's opinion was void because it was rendered with a lack of jurisdiction and that BOTA's reliance gives res judicata effect to that void decision.

We do not hesitate to typify the County's argument as without merit. It is true that Judge Bell's orders in *Dillon I* were entered without jurisdiction and are void. However, the paper on which they were written and the words that were used to write them did

not self-destruct on issuance of a mandate from the Supreme Court, and neither did they disappear. Those papers and those words still exist, and if on an intellectual basis one is inclined to agree, one may do so without regard to the doctrine of res judicata.

BOTA's opinion does not even mention Judge Bell's opinion as being relied upon. It is possible that BOTA was influenced by the words and reasoning in that opinion, but it did not, apparently, solely rely only on it. In resolving the issue, BOTA stated:

"The Board finds further elaboration of each Parties' argument unnecessary as the issue of 'discovery' pursuant to K.S.A. 79-1427a has been extensively discussed and adjudicated in previous Board decisions. In *In the Matter of the Application of Red Coach Inn, Inc. for Relief from a Tax Grievance in Harvey County, Kansas,* Docket No. 92-5357-TG et al., Order on Reconsideration dated May 25, 1994, matter currently pending in the Harvey County District Court, Case No. HV-94C-7769 and *In the Matter of the Application of Sirloin Stockade for Relief from a Tax Grievance in Harvey County, Kansas,* Docket No. 92-3123-TG et al., Order on Reconsideration dated May 25, 1994, matter currently pending in the Harvey County District Court, Case No. HV-94C-7770, in matters empirically identical to those at instant regarding the issue of 'discovery', the Board held that the Harvey County Appraiser 'discovered' the escaped personal property when said property was placed or 'spread' on the Harvey County tax rolls and tax bills were issued to the respective Taxpayers. The Board hereby incorporates these matters into the instant matter, including all testimony and submissions contained therein. Based thereon, the Board finds and concludes that 'discovery' of the alleged escaped personal property did not occur when the Sedgwick County Appraiser mailed written request of the Taxpayers to provide their financial records nor did it occur when the Sedgwick County Appraiser received AGH's initial listing of the Taxpayers personal property, but instead it occurred when the Sedgwick County Appraiser placed the escaped personal property tax assessments on the tax rolls and tax bills were issued to the respective Taxpayers."

There is absolutely no evidence that BOTA felt it was bound by Judge Bell's decision in case No. 93-C-307, let alone that it relied upon it.

We hold that BOTA gave no res judicata effect to the trial court opinion rendered in case No. 93-C-307.

## DATE OF DISCOVERY

One of the major issues litigated in this case was on what date was escaped personal property "discovered." This is an important date because the statute of limitations limits the County in the

terms of years it can recover escaped property in years prior to the discovery. The result is that the date of discovery will dictate, in many cases, the recovery available to the County.

BOTA held that escaped property was discovered on the date the County placed that property on the tax rolls and sent a bill to the owners.

This is the same interpretation placed on this issue by the trial court in *Dillon I*, by this court in *Dillon I*, and by the trial court in the instant matter.

The County argues that this is the wrong date of discovery and that discovery occurred when it sent letters to the taxpayer asking for information.

As pointed out earlier, this has a significant impact on the statute of limitations. The statute of limitations on cases of this nature allows the County to recover escaped taxes back to a period ending 2 years prior to the date of discovery. The further back the County can push the discovery date, the further back it can pursue the taxpayer's escaped property. Under the ruling in effect, the County may go back to 1990 to collect escaped property taxes. If the County is correct and discovery took place in 1990, it could go back as far as 1988.

The County seems to argue, among other things, that once BOTA has decided an issue a particular way, it can never change its decision. That argument is wrong. "An administrative agency is under no obligation to explain its actions in refusing to follow a ruling of a predecessor board in a different case." *Kansas Univ. Police Officers Ass'n v. Public Employee Relations Bd.*, 16 Kan. App. 2d 438, Syl. ¶ 3, 828 P.2d 369 (1991).

Prior to its decision in this case, BOTA had taken a contrary position on this issue. Once again, the County argues that BOTA was influenced by the now notorious and void decision of Judge Bell. The two cases in which BOTA initially took a contrary position on the date of discovery were *Sirloin Stockade* and *Red Coach Inn*, and in reconsidering those two cases, BOTA said:

"7. After reviewing the evidence contained herein, the Board takes administrative notice of *Dillon Stores, et al. v. Board of Sedgwick County Comm'rs*, which

involved facts empirically identical to those at instant, in which the Sedgwick County District Court stated:

'The Court concludes that, under K.S.A. 79-1427a, it must find the point the County Appraiser "discovers" that any tangible personal property has not been listed or has been underreported in order to determine the timeliness of the assessment. The Court concludes that, while the County Appraiser employed outside experts in these matters, and utilized her own staff for processing, she has under the statute reserved to herself the final determination of when the matter is of sufficient certainty to be placed, or "spread" on the tax roll; and as a matter of law, the Court concludes that "discovery" under K.S.A. 79-1427a does not occur until the County Appraiser causes the escaped personal property assessments to be placed on the taxroll.' [Citation omitted.]

"8. The Board finds the *Dillon* . . . decision to be on all fours with the instant matter and persuasive. In the instant matter, the Board finds that the County Appraiser made her final determination [and made the discovery when she] placed the subject personal property on the tax rolls."

As we interpret BOTA's decision, it found that the decision in *Dillon I* was persuasive even though it may have been void. It was, as we have pointed out earlier, free to adopt the logic of that decision, but it gave no indication it felt bound or compelled to do so.

BOTA's decision on the date of discovery was well within its particular ambit of expertise.

"Usually, interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to great judicial deference. *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991). The agency's interpretation of a challenged statute may, in fact, be entitled to controlling significance in judicial proceedings. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719-20, 792 P.2d 971 (1990)." *Kansas Univ. Police Officers Ass'n v. Public Employee Relations Bd.*, 16 Kan. App. 2d at 440.

See *City of Wichita v. Public Employee Relations Bd.*, 259 Kan. 628, 631, 913 P.2d 137 (1996); *State Dept. of Administration v. Public Employees Relations Bd.*, 257 Kan. 275, 281, 894 P.2d 777 (1995).

We have reviewed the record on this issue, and we agree with BOTA and the trial court. We agree that escaped personal property is discovered when it is placed on the tax rolls and a bill is sent to

the owner of the property. It is clear that the initial letter from the County in 1990 was the beginning of an audit period or of a fishing expedition. At that time, the County was not aware of any of Dillon property that may have escaped taxation and was simply beginning the process to identify any that had. One cannot discover property at a time when one cannot even say if it exists or describe what it is. The Sedgwick County Appraiser testified that work must be completed by the County's independent auditors and her employees before a determination could even be made as to whether escaped property existed.

We are not persuaded by the various arguments of the County that the discovery date established in this case was in error. We affirm the decisions of BOTA and the trial court on the issue of when discovery occurred.

## INJUNCTION

As it did in *Dillon I,* the trial court in this case enjoined the County from collecting escaped property taxes from 1986 and 1987. The County argued that since this action was reversed in *Dillon I,* it should be again.

We do not agree. In *Dillon I,* the Supreme Court held that the trial court had no jurisdiction to make any ruling, let alone issue an injunction. The trial court in *Dillon I* lacked subject matter jurisdiction because of the taxpayer's failure to exhaust its administrative remedies. This is not true in this case, and we affirm the issuance of the injunction by the trial court in *Dillon II.*

In addition, as will be pointed out in this opinion, the County has no right to collect escaped property taxes for 1986 and 1987 and, to that extent, its argument is moot.

## TAX YEARS 1986 AND 1987

In 1986 and 1987, the taxpayer elected not to pay its taxes under protest but, instead, elected to rely on grievance applications as set out in K.S.A. 79-1702. The County argues that because the taxes for 1986 and 1987 were paid under protest, BOTA had no jurisdiction over this action.

This argument is obviously based on the assumption that the statute of limitations permitted the County to go back 4 years from

the date of discovery. It also assumes the date of discovery was in 1990. As it develops, both of those assumptions are incorrect.

We decline to address the issues relating to tax years 1986 and 1987. Those years no longer have relevance in this case for the following reasons: (1) We hold the date of discovery was in 1992 and, even under a 4-year statute of limitations, the County could go back only as far as 1988; and (2) in 1995, K.S.A. 1994 Supp. 79-1427a was amended, establishing a 2-year statute of limitations. This amendment was held to be retroactive by our Supreme Court in *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 957 P.2d 473 (1998).

Since the new statute operates retroactively, the County would be limited to a period of 2 years prior to the date of discovery. The years of 1986 and 1987 are barred by the statute of limitations. As to future years, it appears that for 1988 and forward, the taxpayer paid those taxes under protest.

Since there is no relevance to the trial court's treatment of 1986 and 1987, we do not reach this issue.

## DUE PROCESS

At times, it appears the County has difficulty in understanding legal precedent and how it may be applied. The County has argued that the use of legal precedent from a case in which it was not a party denies the County due process of law. The County is simply wrong.

In the order in this case, BOTA cites to its decisions in *Red Coach Inn* and *Sirloin Stockade* and incorporates those cases into its decisions. The County argues that since it was not a party to *Red Coach Inn* or *Sirloin Stockade*, this violates its due process rights. We disagree. There is nothing wrong with BOTA citing to and choosing to follow its own earlier decisions. The County's arguments to the contrary are without merit.

## ABATEMENT OF PENALTIES

K.S.A. 1994 Supp. 79-1427a(a) provided in relevant part:

"In the case of property which has escaped taxation, it shall be the duty of the county appraiser to list and appraise such property and add 100% thereto as a penalty for escaping taxation for each such year during which such property was

not listed, and it shall be designated on the appraisal roll as 'escaped appraisal' for each such preceding year or years."

Following the dictates of the statute, the County assessed a 100% penalty against the taxpayer.

BOTA has the authority to abate the penalties if the taxpayer could show excusable neglect under K.S.A. 1994 Supp. 79-1427a(b), which, in relevant part, states:

"The state board of tax appeals shall have the authority to abate any penalty imposed under the provisions of this section and order the refund of the abated penalty, whenever excusable neglect on the part of the person required to make and file the statement listing property for assessment and taxation purposes is shown."

In this case, BOTA reduced the penalty to 20% of the taxes due and owing. The County argues this was error.

The principal question is whether the taxpayer was able to prove "excusable neglect." It seems to us that whether there was excusable neglect is a question of fact. Both BOTA and the trial court believed the taxpayer and found there was excusable neglect and reduced the penalties accordingly. We have examined the record and the explanation of BOTA as to why it reduced the penalties. We find that reasoning satisfactory, and we affirm it. We also find substantial competent evidence to support BOTA's decision to reduce the penalty on the basis of excusable neglect, and we will not substitute our judgment for that of BOTA.

### 1995 AMENDMENT TO K.S.A. 1994 SUPP. 79-1427a

Effective July 1, 1995, the legislature amended K.S.A. 1994 Supp. 79-1427a and reduced the statute of limitations from 4 prior years to 2 prior years measured from the date of discovery.

The taxpayer's cross-appeal in this case is based on an argument that the statute of limitations, as amended in 1995, should have been applied retroactively. The trial court refused to do so.

We reverse the trial court's decision in this regard. We do so on the basis of the Kansas Supreme Court's opinion in *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518.

. The Supreme Court in that decision held that the 1995 amendment to 79-1427a, setting a 2-year statute of limitations for escaped

taxes, was to be applied retroactively. 264 Kan. 518, Syl. ¶ 7. We agree with the *American Restaurant* opinion, and we are bound by it. We hold that the 1995 amendment to 79-1427a applies retroactively and that the County can only recover escaped taxes for a period of 2 years prior to the date of discovery.

Affirmed in part, reversed in part, and remanded.