IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,734

AYSE CARMAN,
*Appellant*,

v.

BRYANT HARRIS,
*Appellee.*

SYLLABUS BY THE COURT

1.

When initially awarding child support in a paternity order under K.S.A. 2020 Supp. 23-2215, the district court may order the payment of all or a portion of the necessary medical expenses incident to the child's birth.

2.

Under K.S.A. 2020 Supp. 23-3005(b), the court may make a modification of child support retroactive to the first day of the month following the filing of the motion to modify.

3.

Under this case's facts, the district court lacked authority to consider the mother's request for payment of her prenatal care and birth expenses because she made that request more than a year after the paternity order.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 24, 2019. Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Opinion filed April 30, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Ayse Carman*, appellant pro se, was on the briefs.

*Bryant Harris*, appellee pro se, was on the brief.

The opinion of the court was delivered by

BILES, J.: Ayse Carman seeks our review of a Court of Appeals decision affirming a district court's refusal to order her child's father to pay half of her expenses for prenatal medical care and the child's birth. But Carman waited too long to correct what she argues was an oversight at the time of the initial paternity award. We agree with both lower courts that the court's authority to order payment expired before Carman sought reimbursement.

## FACTUAL AND PROCEDURAL BACKGROUND

Carman gave birth to E.C. in 2014. She assigned her support rights to the Kansas Department for Children and Families. In December 2014, DCF filed a petition to determine paternity, alleging Bryant Harris was the father and that he owed support. DCF also alleged he was liable for expenses Carman incurred for the child's support, education, and medical care since birth. But the petition did not seek expenses for Carman's prenatal medical care or the birth.

A hearing officer heard the matter on March 10, 2015, and filed a journal entry a week later approved by a district court judge. That journal entry shows Carman appeared pro se, but Harris did not appear. The hearing officer found Harris was E.C.'s father and ordered him to pay monthly child support prospectively and to repay DCF $818 for support it provided to date.

2

Harris asked for a rehearing. In an April 2015 journal entry, the hearing officer reduced the support obligation. That order notified the parties that

> "this order is subject to the approval of a District Court Judge. *This order will become a final order unless one of the parties files a motion, within 14 days of the filing of this order, with the Clerk of the District Court asking for review of this order by a District Court Judge.* See Supreme Court Rule 172(h)." (Emphasis added.)

On May 5, 2015, the hearing officer denied another request for rehearing. But the motion prompting this May 2015 order is not in the record, so its basis is unknown. The order contained the same warning about its finality as the April 2015 journal entry. The record contains no requests for modifications. In August 2015, Carman and Harris agreed to a court-approved parenting plan.

On August 3, 2016, Carman filed the request for expenses that prompts this appeal. She asked for $3,054.41 from Harris to pay half her prenatal medical and child birth expenses. She attached bills from her health care providers. She also asked to modify Harris' support obligation. Shortly after these motions, Harris moved to modify custody, parenting time, and child support. He also asked to change the child's last name. In September 2016, Harris also moved to enforce parenting time required by the agreed parenting plan.

At a June 2017 evidentiary hearing on these various motions, Carman represented herself. She testified briefly. As to her expenses, she said

> "I'm also asking for judgment towards prenatal care and birthing expense[s] that are on my credit report. Respondent told me that these are my expenses only. I tried resolving the issue with him in the last three years. I did not even ask him—ask us to pay

3

based on the percentages of our income. Which would mean that he would pay the higher percentages. I only asked that we pay 50 percent."

As the hearing concluded, the court made orders for parenting time and the parties' prospective child support obligations. It then asked if it had covered everything, and Carman mentioned her motion for prenatal care and birth expenses. The court said it did not think it could do anything about them because the paternity journal entry controlled expenses before March 10, 2015—the date the hearing officer considered DCF's first petition. The court noted the paternity order granted the $818 and said "it doesn't appear that there was any request made for birth expenses or anything of that." Carman pointed out the $818 reimbursed DCF for support since E.C.'s birth and argued "[t]here is one sentence . . . that mother incurred medical expenses but the Hearing Officer didn't rule on that." The district court denied her request for prenatal care and birth expenses because "that was previously addressed and ruled upon" in the original paternity order.

Carman appealed on various issues, including the refusal to award her expenses for the pregnancy and child birth. On this point, she argued the August 3, 2016 motion covered those expenses, but in her view the district court mistakenly considered the $818 to DCF as covering her expenses. A Court of Appeals panel affirmed. *Carman v. Harris*, No. 118,734, 2019 WL 2237381 (Kan. App. 2019) (unpublished opinion).

On the expenses issue, the panel reasoned that besides the reference to the $818, the district court also found Harris was not responsible for any expenses before the paternity order and denied recovery of the mother's birth expenses from 2014 because they predated the paternity order and were not included in that order. The panel simply held without further explanation, "We find no error in that." 2019 WL 2237381, at *8.

Carman petitioned this court for review, which we granted to consider whether the district court correctly refused to award her prenatal care and birth expenses. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Our question is whether the district court erred when it concluded it could not order prenatal care and birth expenses at the June 2017 hearing on child support modification. As explained, we agree that authority had lapsed by that time.

*Standard of review*

Whether the district court could grant Carman's request turns on an interpretation of Kansas' paternity and child support statutes. Statutory interpretation is a legal question subject to de novo review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

> "The most fundamental rule of statutory interpretation is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. [The court] will only review legislative history or use canons of construction if the statute's language or text is ambiguous. [Citations omitted.]" *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021).

*Discussion*

DCF initiated this case as a parentage action to establish Harris' paternity and support obligation, as permitted by K.S.A. 2020 Supp. 23-2209(b). That statute is part of the Kansas Parentage Act, K.S.A. 2020 Supp. 23-2201 et seq. The Act governs "[p]roceedings concerning parentage of a child." K.S.A. 2020 Supp. 23-2201(b). The Parentage Act is part of the Kansas Family Law Code. See K.S.A. 2020 Supp. 23-2102 ("The provisions of the Kansas family law code shall be construed to secure the just, speedy, inexpensive and equitable determination of issues in all domestic relations matters.").

Carman refers us to two statutes:  K.S.A. 2020 Supp. 23-2204 and K.S.A. 2020 Supp. 23-2215. But the first, K.S.A. 2020 Supp. 23-2204, is not relevant to the issue. It provides:

> "(b) A written description of the rights and responsibilities of acknowledging paternity shall state the following:
>
> . . . .
>
> (2) both the father and the mother are responsible for the care and support of the child. If necessary, this duty may be enforced through legal action such as a child support order, an order to pay birth or other medical expenses of the child or an order to repay government assistance payments for the child's care. A parent's willful failure to support the parent's child is a crime." K.S.A. 2020 Supp. 23-2204.

This case did not involve a paternity acknowledgment, so K.S.A. 2020 Supp. 23-2204 is inapplicable. Instead, DCF initiated this action to establish Harris' paternity and

6

support obligation. K.S.A. 2020 Supp. 23-2215—the second statute Carman directs us to—defines the scope of orders in a parentage action. It provides in part that

"(c) Upon adjudging that a party is the parent of a minor child, the court shall make provision for support and education of the child under article 30 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto. *The court may order the payment of all or a portion of the necessary medical expenses incident to the child's birth.* The court may order the support and education expenses to be paid by either or both parents for the minor child.

. . . .

"(f)(1) *In entering an original order for support of a child under this section, the court may award an additional judgment to the mother or any other party who made expenditures for support and education of the child from the date of birth to the date the order is entered*. If the determination of paternity is based upon a presumption arising under K.S.A. 23-2208, and amendments thereto, the court shall award an additional judgment to reimburse all or part of the expenses of support and education of the child from at least the date the presumption first arose to the date the order is entered, except that no additional judgment need be awarded for amounts accrued under a previous order for the child's support.

(2) The court may consider any affirmative defenses pled and proved in making an award under this subsection.

(3) The amount of any award made under this subsection shall be determined by application of the Kansas child support guidelines. For any period occurring five years or less before or after commencement of the action, there is a rebuttable presumption that such child support guidelines amount reflects the actual expenditures made on the child's behalf during that period. For any period occurring more than five years before commencement of the action, the person seeking the award has the burden of proving that

7

the total amount requested for that period does not exceed expenditures actually made on the child's behalf during that period." (Emphases added.) K.S.A. 2020 Supp. 23-2215.

Plainly, K.S.A. 2020 Supp. 23-2215 permits a court to award birth expenses when entering an initial child support award in a paternity order. But the question is not whether it would have been proper to order Harris to pay birth expenses. Instead, we must decide whether the district court could order him to pay when it was not asked to do so earlier in the original order of support, i.e., the paternity order.

Before the Parentage Act's adoption, the general rule was that child support orders were prospective only. But the Act modified that by permitting courts to enter a retroactive support order against a newly determined parent for expenses going back to the child's birth. 1 Elrod, Kansas Law and Practice: Kansas Family Law § 7:18; see *In re Paternity of Janzen v. Janzen*, 43 Kan. App. 2d 613, 618, 228 P.3d 425 (2010) (upholding support order against father for 18-year period from date of divorce from mother through child's age of majority, when child sought support through a parentage action and support was not determined in divorce action).

Under article 30 of chapter 23 of the Kansas Statutes Annotated, later modification of a child support obligation is governed by K.S.A. 2020 Supp. 23-3005. But the modification permitted can be made retroactive only to the first day of the month following the motion to modify. The statute provides:

> "(a) Subject to the provisions of K.S.A. 23-36,207, and amendments thereto, the court may modify any prior child support order, including any order issued in a title IV-D case, within three years of the date of the original order or a modification order, when a material change in circumstances is shown, irrespective of the present domicile of the child or the parents. If more than three years has passed since the date of the original order or modification order, a material change in circumstance need not be shown.

8

"(b) The court may make a modification of child support retroactive to the first day of the month following the filing of the motion to modify. Any increase in support ordered effective prior to the date the court's judgment is filed shall not become a lien on real property pursuant to K.S.A. 60-2202, and amendments thereto, until the date of the order." K.S.A. 2020 Supp. 23-3005.

Under K.S.A. 2020 Supp. 23-3005's plain language, the trial court lacked authority to modify retroactively Harris' support obligation, except during the limited timeframe in subsection (b).

The district court also lacked authority to modify the original paternity journal entry to award prenatal and birth expenses because Carman did not raise the issue in time. The district court approved the paternity order under Supreme Court Rule 172, which permits a judicial district's chief judge to "appoint a judge of the district court, a court trustee, or an attorney licensed to practice law in the state of Kansas to preside as a hearing officer at a summary hearing on . . . the establishment, modification, or enforcement of support (under the Kansas Parentage Act, K.S.A. 23-2201 et seq. . . .)." Supreme Court Rule 172(a)(1) (2020 Kan. S. Ct. R. 219); see also K.S.A. 2020 Supp. 20-164(a) (directing Supreme Court to "establish by rule an expedited judicial process which shall be used in the establishment, modification and enforcement of orders of support"). And under Rule 172:

"An order of a hearing officer—other than a district judge—appointed under this rule is subject to review by a district judge on a party's motion filed no later than 14 days after the order is entered. The district judge will review the transcript or a recording of the hearing and admitted exhibits and, applying an abuse of discretion standard, may affirm, reverse, or modify an order. If a transcript is not available, the district judge will conduct a de novo proceeding." Supreme Court Rule 172(h) (2020 Kan. S. Ct. R. 220).

9

Carman was a party to the action, appearing at both the original hearing on the petition and the hearing on Harris' motion for rehearing. And she could have been the one who filed the May 2015 motion for rehearing, which was denied, and unavailable for us to check. Carman also could have asked for district court review within the 14 days set out in Rule 172(h). And she could have moved for rehearing, modification, or for relief from the parentage order.

The Kansas Code of Civil Procedure governs proceedings under the Kansas Family Law Code, except as otherwise provided. K.S.A. 2020 Supp. 23-2103. And under the civil procedure code, Carman could have requested a new trial or moved to alter or amend the judgments within 28 days after the journal entry of judgment. See K.S.A. 2020 Supp. 60-259(b), (f). Similarly, relief might have also been sought on the grounds of mistake, inadvertence, or excusable neglect if that relief was sought within one year of the judgment; or for "any other reason that justifies relief" if sought within a reasonable time. See K.S.A. 2020 Supp. 60-260(b)(1), (b)(6), (c). But Carman did not seek postjudgment relief until more than a year after the paternity order and did not offer the district court any reason why her effort to revisit the paternity order issue was otherwise timely.

We hold the district court lacked authority to award prenatal care and birth expenses by the time Carman filed the motion in 2016. Birth expenses are a specific support obligation in K.S.A. 2020 Supp. 23-2215 and the Kansas Child Support Guidelines, but DCF did not request them and the paternity order did not impose them. And to the extent Carman claims mistake, no one tried to modify the order within the times allowed by Rule 172 or the civil procedure code.

10

The unavoidable result here is that the district court's authority over the support obligation at the June 2017 hearing was limited to modifications permitted by K.S.A. 2020 Supp. 23-3005. That did not include the prenatal care and birth expenses.

Affirmed.

STANDRIDGE, J., not participating.