IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,328

CITY OF SHAWNEE,
*Appellee*,

v.

ASNAKE H. ADEM,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Kansas Offender Registration Act, K.S.A. 2020 Supp. 22-4901 et seq., requires registration by any person defined as a "sex offender."

2.

K.S.A. 2020 Supp. 22-4902(b)(7) defines "sex offender" to include "any person who . . . has been convicted of an offense that is comparable to any crime defined in [K.S.A. 2020 Supp. 22-4902(b)]."

3.

K.S.A. 2020 Supp. 22-4902(b) specifies sexual battery as defined in K.S.A. 2020 Supp. 21-5505(a) to be an offense triggering offender registration.

4.

For purposes of offender registration for conviction of an offense under K.S.A. 2020 Supp. 22-4902(b)(7), sexual battery as defined in the Uniform Public Offense Code

for Kansas Cities § 3.2.1 and adopted by the City of Shawnee is an offense "comparable" to sexual battery as defined in K.S.A. 2020 Supp. 21-5505(a).

5.

The Kansas Offender Registration Act is not part of the Kansas Code of Criminal Procedure within the meaning of K.S.A. 22-2102, which provides "[t]he provisions of this code shall govern proceedings in all criminal cases in the courts of the state of Kansas, but shall have application to proceedings in police and municipal courts only when specifically provided by law."

6.

When statutory text is plain and unambiguous, courts should not speculate about the legislative intent and should refrain from reading something into the statute that is not readily found in its words.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 560, 472 P.3d 123 (2020). Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed August 27, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Richard P. Klein*, of Olathe, argued the cause and was on the brief for appellant.

*Jenny L. Smith*, assistant city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Asnake Adem seeks our review after a Court of Appeals panel held the Kansas Offender Registration Act, K.S.A. 2020 Supp. 22-4901 et seq., applies to his municipal court conviction for sexual battery. See *City of Shawnee v. Adem*, 58 Kan.

2

App. 2d 560, 561-62, 472 P.3d 123 (2020). His concern arises because the act does not explicitly declare that it applies to municipal ordinance violations, so he argues this silence weighs in his favor. But at the time of his conviction, K.S.A. 2018 Supp. 22-4902(b)(7) required registration by any person convicted of an offense "comparable" to crimes listed in that subsection. And Adem's sexual battery conviction under the Uniform Public Offense Code adopted by the City of Shawnee has the same definition as the crime of sexual battery listed in K.S.A. 2020 Supp. 22-4902(b). We hold his municipal conviction is an "offense" within the meaning of K.S.A. 2020 Supp. 22-4902(b)(7) and "comparable" to a crime defined in K.S.A. 2020 Supp. 22-4902(b)(5) (sexual battery as defined in K.S.A. 2020 Supp. 21-5505[a]). KORA requires Adem to register. We affirm the panel.

FACTUAL AND PROCEDURAL BACKGROUND

Adem drove a taxi late at night with two female passengers. He dropped the first off in Overland Park and started toward Shawnee with the other. During the drive, he pulled the car over and asked her to move to the front seat. After she switched seats and the pair continued on, he repeatedly asked her to go to a bar with him. She refused. A short time later, he pulled the car over again, this time to embrace her for 15 to 30 seconds from the driver's seat. He started to rub her forearm and thigh in a sexual nature. She asked him to take her to a different destination she knew was closer and would have other people. But before getting there, Adem pulled the car over again and embraced her. He repeated this yet a third time when they arrived. She reported the incident to police the next morning.

The City of Shawnee charged Adem with sexual battery in violation of Shawnee Municipal Code § 9.01.010 (incorporating Uniform Public Offense Code for Kansas Cities § 3.2.1 [36th ed. 2020]) (UPOC § 3.2.1). In April 2018, a Shawnee Municipal

3

Court judge convicted Adem and sentenced him to 12 months' probation with an underlying jail sentence of 180 days. The court required a sex offender evaluation.

Adem appealed to Johnson County District Court, where a six-person jury found him guilty on the sexual battery charge after a trial de novo. The district court imposed the same 12 months' probation with an underlying 180-day jail sentence. It also advised Adem he must register as a sex offender under KORA.

Adem appealed his conviction and sentence, specifically challenging the sex offender registration requirement. A Court of Appeals panel affirmed the district court, noting the Shawnee Municipal Code defined sexual battery the same as the sexual battery offense listed in KORA. It held he must register as a sex offender. *Adem*, 58 Kan. App. 2d at 567-69.

Adem petitioned for review with this court, which we granted. The City did not file a cross-petition for review of the panel's rejection of its claim that Adem's registration arguments were not yet ripe for appellate review. 58 Kan. App. 2d at 562-65. But that failure does not end a jurisdictional issue, so we have reviewed the question sua sponte. See *State v. Marinelli*, 307 Kan. 768, 769, 415 P.3d 405 (2018) (appellate court has duty to question jurisdiction on its own initiative). We hold the panel correctly rejected the City's jurisdictional attack. See K.S.A. 2020 Supp. 22-3602(a) (defendant may appeal as a matter of right from any judgment against defendant including any district court decision or intermediate order made in the progress of the case); *Marinelli*, 307 Kan. at 787 ("[E]ven those instances when registration is based on the convicted offense . . . should be caught up in the jurisdictional net cast by the first sentence in K.S.A. 2017 Supp. 22-3602[a].").

4

Jurisdiction to consider Adem's challenge is proper under K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions) and K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

KORA requires registration by any person it defines as a "sex offender." To decide whether Adem must register for his municipal sexual battery conviction, we look to K.S.A. 2020 Supp. 22-4902(b)(7). It defines "sex offender" to include "any person who . . . has been convicted of an offense that is *comparable to any crime defined in this subsection*." (Emphasis added.) We must determine whether UPOC § 3.2.1 is an "offense" that is "comparable" to any crime defined in K.S.A. 2020 Supp. 22-4902(b). This is a question of statutory interpretation. See *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021) (holding application of the term "drug offender" under KORA is a question of statutory interpretation).

When interpreting a statute, we begin with its plain language, giving common words their ordinary meaning. If a statute is plain and unambiguous, we do not speculate about the legislative intent behind that clear text. But if the statutory language is ambiguous, we will consult our canons of construction to resolve the ambiguity. *Johnson v. U.S. Food Serv.*, 312 Kan. 597, 601, 478 P.3d 776 (2021).

State law empowers Kansas cities to enact ordinances regulating conduct within their jurisdictions and to prosecute violations of those ordinances in their municipal courts. See K.S.A. 12-3001 et seq. (provisions governing city ordinances); K.S.A. 12-4101 et seq. (governing municipal court proceedings); K.S.A. 12-4201 et seq. (same); K.S.A. 12-4301 et seq. (same); K.S.A. 12-4401 et seq. (same); K.S.A. 12-4501 et seq.

(same); K.S.A. 12-4601 et seq. (same). And with that statutory authority, the City of Shawnee adopted UPOC § 3.2.1, which Adem violated.

Our first question is whether Adem's municipal ordinance conviction may be considered an "offense" within the meaning of K.S.A. 2020 Supp. 22-4902(b)(7). We hold that it is. The term "offense" is commonly defined as "[a] violation of the law; a crime, often a minor one." Black's Law Dictionary 1250 (11th ed. 2019).

We must next decide whether UPOC § 3.2.1 is "comparable" to the sexual battery crime defined in K.S.A. 2020 Supp. 21-5505(a). See K.S.A. 2020 Supp. 22-4902(b)(5), (b)(7). We have little difficulty concluding that it is. To begin with, Adem concedes the sexual battery elements under UPOC § 3.2.1 are identical to those of sexual battery under K.S.A. 2020 Supp. 21-5505(a). That statute defines sexual battery as "the touching of a victim who is not the spouse of the offender, who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another." Given that both crimes comprise identical components, we hold Adem's convicted offense is a "comparable" crime that requires registration.

In *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018), the court considered the meaning of the term "comparable" in the context of calculating criminal history scores under the revised Kansas Sentencing Guidelines Act, K.S.A. 2017 Supp. 21-6801 et seq. The issue arose because K.S.A. 2017 Supp. 21-6811(e)(3) provided that out-of-state convictions are scored as more serious "person" crimes if they are "comparable" to crimes defined as such under Kansas law. The *Wetrich* court had to decide whether "comparable" meant merely approximate or something more stringent when confronting an out-of-state burglary with elements much like—but not identical to—the person-crime form of Kansas burglary. The court concluded that for an out-of-state crime to be "comparable" to a Kansas person crime, "the elements of the out-of-state crime cannot be

6

broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *Wetrich*, 307 Kan. at 562.

In Adem's case, the municipal ordinance is identical to the statutory crime, so K.S.A. 2020 Supp. 22-4902(b)(7)'s application is obvious because the respective elements are not just analytically comparable—they are indistinguishable. See *Patterson v. Cowley County*, 307 Kan. 616, 622, 413 P.3d 432 (2018) ("A court determines legislative intent by first applying the meaning of the statute's text to the specific situation in controversy."). We express no opinion, however, whether *Wetrich*'s definition of "comparable" might apply to K.S.A. 2020 Supp. 22-4902(b)(7) when the elements of an offense are narrower or broader than the crime it is being compared to for KORA purposes. The lack of a less than perfect statutory alignment makes no difference here.

But Adem argues against a plain statutory language result under K.S.A. 2020 Supp. 22-4902(b)(7) by focusing attention elsewhere. First, he asserts KORA should not apply to any municipal ordinance violations because of a separate provision in the Kansas Code of Criminal Procedure. Second, he contends the Legislature showed its clear intent not to apply KORA to municipal ordinances when it failed to amend the act in 2012 to make its application explicit. We disagree with both points.

First, Adem argues KORA does not apply because K.S.A. 22-2102 states that "[t]he provisions of [KCCP] shall govern proceedings in all criminal cases in the courts of the state of Kansas, *but shall have application to proceedings in police and municipal courts only when specifically provided by law*." (Emphasis added.) He notes KORA is located within the Kansas Code of Criminal Procedure, and that nothing specifically says KORA applies to municipal court proceedings. But this court has held the Revisor of Statutes' decision to place a statute in a particular location is not persuasive evidence of

legislative intent. See *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 847, 610 P.2d 1107 (1980) ("[T]he placement of a law in a particular location in the General Statutes by the compiler is not persuasive as to the intent of the legislature which enacted it."). The Court of Appeals panel discussed the placement of KORA in chapter 22 and characterized it as an accident of the Revisor's editorial discretion. It reasoned,

> "[S]ince we have been unable to locate any legislatively mandated methodology for classification of statutes, it is apparent that the Revisor utilizes broad editorial discretion as to the placement and numbering of new laws within Kansas Statutes Annotated.

> "It is clear to us that this is what happened with the original version of KORA. (The name was changed from the original 1993 version to the existing title when extensive broadening of the act beyond sex offenses occurred in 1997.) See 1997, ch. 181, § 7. The Revisor obviously concluded that since the subject matter of KORA (in its predecessor form) dealt with additional sanctions on certain criminal offenders which flowed directly from their convictions, it was logical to classify them with like items in Chapter 22 under the rubric 'Kansas Code of Criminal Procedure.' Obvious, also, is the fact that at that time the Revisor did not have the benefit of our Supreme Court's thinking in *State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017), *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016), and similar cases holding that the Legislature intended KORA to be a regulatory scheme that is civil and nonpunitive for all classes of offenders. *Huey*, 306 Kan. at 1009.

> "So it is that KORA has become an isolated outpost in its current location within our statute books—an island of civil law surrounded by a sea of criminal procedure. If there once was any doubt whether KORA is separate from the KCCP, we conclude that none should now exist. We hold that KORA acts in concert with, but is not a part of, either the KCCP in general or our sentencing statutes in particular. It is its own separate act with its own regulatory purposes despite its current home as Article 49 of Chapter 22 of Kansas Statutes Annotated.

> "The point that the KCCP cannot be read to fully embrace all the articles which have been lodged in Chapter 22 by the Revisor is buttressed by the fact that the very next section following the KORA, Article 50, contains enabling legislation for the 'National Crime Prevention and Privacy Compact,' which obviously serves a worthy, but totally independent, purpose from the KCCP." *Adem*, 58 Kan. App. 2d at 566-67.

We agree with the panel's conclusion. The Legislature enacted K.S.A. 22-2102 during its 1970 session in a bill containing a host of provisions touching on various aspects of criminal prosecutions, including jurisdiction and venue, pretrial and trial procedures, and appeals. See L. 1970, ch. 129, § 22-2102. And the Legislature has shown it knows how to express its intent when new provisions are to be considered part of KCCP. See, e.g., K.S.A. 2020 Supp. 22-2411 (provision governing federal officers' arrest powers, providing "[t]his section shall be a part of and supplemental to the Kansas code of criminal procedure"); K.S.A. 22-2514 et seq. (1974 act governing interception of wire, oral, and electronic communications, providing that "[t]his act shall be a part of and supplemental to the code of criminal procedure"); K.S.A. 2020 Supp. 22-2619 (2014 provision governing venue for electronic crimes, providing "[t]his section shall be a part of and supplemental to the Kansas code for criminal procedure"); K.S.A. 22-2818 (1981 statute on appearance bonds for traffic violations, providing that "[t]his section shall be part of and supplemental to the Kansas code of criminal procedure"); K.S.A. 2020 Supp. 22-3015(c) (provision governing amendment of grand jury indictment enacted in 2013, providing "[t]his section shall be part of and supplemental to article 30 of chapter 22 of the Kansas Statutes Annotated . . . ."); K.S.A. 2020 Supp. 22-3016(b) (provision governing grand jury removal of presiding judge, providing section is part of K.S.A. chapter 22, article 30).

But the Legislature did not specify that KORA be "part of and supplemental to the code" when KORA was added to our laws in 1993. And we note nothing similar in

9

KORA itself shows an intention to consider it to be part of the KCCP in any later legislative revisions. We must assume this is deliberate. See *State v. Nambo*, 295 Kan. 1, 4-5, 281 P.3d 525 (2012) ("In K.S.A. 21-4618[a] the legislature showed in a statute mandating imprisonment for the use of firearms in the commission of crimes against persons that it knew how to utilize the active voice and to specify the individual actor. So we assume in the statute . . . mandating offender registration for the use of deadly weapons in the commission of person felonies that the legislature's omission of these two particular features was intentional.").

Our caselaw also consistently holds the Legislature intended KORA to be a civil regulatory scheme to promote public safety that is nonpunitive. See *State v. Myers*, 260 Kan. 669, 681, 923 P.2d 1024 (1996) (discussing KORA's precursor, Kansas Sex Offender Registration Act; noting while law contained no express statement of legislative intent or purpose, "the legislative history suggests a nonpunitive purpose—public safety"); *State v. Petersen-Beard*, 304 Kan. 192, 195, 377 P.3d 1127 (2016) (emphasizing it was not disturbing prior court decisions holding the Legislature intended KORA to be a nonpunitive and civil regulatory scheme rather than punishment). We have also held KORA is not punishment under the "effects" portion of the "intent-effects" test under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. 304 Kan. at 210-11. Adem does not explain why this civil regulatory scheme should be viewed as part of the criminal code for K.S.A. 22-2102 purposes, other than when he incorrectly characterizes his duty to register as part of his criminal sentence. See *Marinelli*, 307 Kan. at 786 (registration requirements not part of criminal sentence). And as the Court of Appeals noted, the Revisor of Statutes did not have the benefit of later caselaw holding KORA is a civil regulatory scheme when the act was located within chapter 22. *Adem*, 58 Kan. App. 2d at 566.

10

For these reasons, we hold K.S.A. 22-2102 does not render KORA inapplicable to municipal court proceedings.

Second, Adem claims the Legislature proved it did not intend KORA to apply to municipal convictions because it declined an opportunity to say that explicitly in 2012. He contends there is meaning in the fact that 2012 House Bill 2568 was introduced during the 2012 session with a provision expressly applying KORA to comparable municipal convictions, only to have that provision left out of the bill's final version. He contends this "is a clear indication that the legislature did not intend for municipal sex offense convictions to require registration." We disagree. Legislative inaction is not necessarily indicative of legislative intent. *Unified Sch. Dist. No. 501 v. Baker*, 269 Kan. 239, 246-47, 6 P.3d 848 (2000) (citing *Board of Leavenworth County Comm'rs. v. McGraw Fertilizer Serv., Inc.*, 261 Kan. 901, 916, 933 P.2d 698 [1997] [court can draw many contradictory inferences from Legislature's failure to pass a bill]); *Higgins v. Cardinal Manufacturing Co.*, 188 Kan. 11, 25, 360 P.2d 456 (1961) (it is "highly speculative" to conclude Legislature's failure to pass a bill on the subject at hand points to legislative intent; Legislature may have considered the legislation unnecessary because of current state law). In other words, why is it not just as likely a decision was made during the legislative process that this revision was unnecessary because municipal convictions were already covered by the existing law as we have explained?

Even so, the danger for mischief in the statutory interpretation process is especially possible with controversial enactments like KORA because proposals too many to list over the years have been sought to revise this statutory scheme with mixed success. Finding any particular meaning from one legislative failure would be perilous at best and more likely to simply tempt a rationalization that delivers a desired result. This is why we adhere to plain language statutory interpretation when we can. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, 765-66, 374 P.3d 680 (2016) ("'More important [than

11

legislative acquiescence] is the application of the doctrine of statutory interpretation that directs us to consider the plain language of the statutes.'"); Scalia & Garner, Reading Law: The Interpretation of Legal Texts 378 (2012) ("Legislative history greatly increases the scope of manipulated interpretation, making possible some interpretations that the traditional rules of construction could never plausibly support.").

The dissent puts these perils on full display. For example, it recites as significant validation for its argument an editor's note to the Uniform Public Offense Code, citing *State v. Adams*, No. 114,276, 2016 WL 4499520 (Kan. App. 2016) (unpublished opinion), for the note's declaration that "a conviction for [Sec. 3.2.1 Sexual Battery] will not subject the defendant to registering as a sexual offender pursuant to K.S.A. 22-4902(b)(5)." Slip op. at 20. But *Adams* expressly said it was *not* deciding that question, so the editor's note is just wrong to cite *Adams* for this proposition. But the dissent leaves the reader to believe this note somehow makes the dissent's point, even though the dissent seems to understand the note's actual lack of caselaw support by later observing in passing: "The panel declined to reach this ultimate question." Slip op. at 20. To be clear, this is what the *Adams* panel actually said:

> "Our review of these relevant sections, particularly the inclusion in the definition of 'sex offender' of 'any person who . . . has been convicted of an offense that is comparable to any crime defined in this subsection'—which would include a crime comparable to sexual battery as defined in K.S.A. 2015 Supp. 21-5505(a)—*makes us question Adams' underlying premise*. However, we need not explore the question further because the case can be decided on narrower grounds, and we expressly refrain from deciding whether those convicted under a municipal ordinance comparable to the crime of sexual battery as defined in K.S.A. 2015 Supp. 21-5505(a) have a duty to register under KORA. *Even if persons convicted of sexual battery are treated differently under a municipal ordinance as opposed to a state statute*, Adams still cannot establish an equal protection violation." (Emphases added.) *Adams*, 2016 WL 4499520, at *3.

12

The dissent would have us believe the Revisor's decision on where to place newly passed legislation in the Kansas statutes can somehow create an ambiguity in the text enacted by the Legislature. But as previously discussed our caselaw does not agree with that proposition, so why go beyond the statutory text to try to decide this case? What the dissent actually does is reinforce an observation usually attributed to Judge Harold Leventhal formerly of the District of Columbia Circuit who compared the use of legislative history to entering a crowded cocktail party and looking over the heads of the guests for one's friends. See *Conroy v. Aniskoff*, 507 U.S. 511, 519, 113 S. Ct. 1562, 123 L. Ed. 2d 229 (1993) (Scalia, J., concurring); Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L. Rev. 195, 214 (1983) (also attributing observation to Judge Leventhal).

The dissent dismisses the plain language of K.S.A. 2020 Supp. 22-4902(b)(7) that deals exclusively with the definition of comparable crimes for application of KORA, which is the question presented. And when statutory text is plain and unambiguous, courts should not speculate about the legislative intent and should refrain from reading something into the statute that is not readily found in its words. *Carman v. Harris*, 313 Kan. 315, 318, 485 P.3d 644 (2021). There are no ambiguous terms or phrases in K.S.A. 2020 Supp. 22-4902(b)(7) that justify applying canons of statutory construction as Adem would have us do.

Affirmed.

13

* * *

STANDRIDGE, J., dissenting:  I would find that the Kansas Offender Registration Act (KORA) is subject to the Kansas Code of Criminal Procedure (KCCP) and—in the absence of the Legislature specifically providing otherwise—that the KORA comparability provision does not apply to municipal court convictions. For this reason, I respectfully dissent from the majority's analysis and conclusion.

To the extent the issues presented involve questions of statutory interpretation, our court exercises unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of statutory construction is that the Legislature's intent governs if it can be ascertained. *State v. Keel*, 302 Kan. 560, 572, 357 P.3d 251 (2015). An appellate court first must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When construing statutes, appellate courts must consider various provisions of an act *in pari materia* with a view toward reconciling and bringing the provisions into workable harmony if possible. 302 Kan. at 572-74.

KORA deems any person convicted of sexual battery as defined in K.S.A. 2020 Supp. 21-5505(a) to be a sex offender subject to registration. K.S.A. 2020 Supp. 22-4902(b)(5). There is no corresponding KORA statutory provision deeming a person convicted of sexual battery as defined in a municipal ordinance to be a sex offender subject to registration. But KORA does require registration for any person who "has been convicted of an offense that is comparable to any crime defined in this subsection, or any out-of-state conviction for an offense that under the laws of this state would be an offense defined in this subsection." K.S.A. 2020 Supp. 22-4902(b)(7).

14

Adem concedes the sexual battery statute, K.S.A. 2020 Supp. 21-5505(a), is comparable to his crime of conviction under the sexual battery municipal ordinance at Shawnee Municipal Code § 9.01.010 (incorporating Uniform Public Offense Code for Kansas Cities § 3.2.1 [36th ed. 2020]) (UPOC § 3.2.1). And rightly so, because the plain language of the KORA statute clearly states that any person convicted of an offense comparable to sexual battery as defined in K.S.A. 2020 Supp. 21-5505(a) is a sex offender subject to registration. Through this concession, Adem has made the "plain language of the statute" a non-issue in this appeal.

Instead, Adem argues he is not required to register under KORA's comparability provision because KORA is inapplicable to municipal court convictions. He points to K.S.A. 22-2102, which provides that the KCCP's provisions "shall have application to proceedings in police and municipal courts *only when specifically provided by law*." (Emphasis added.) Adem argues that KORA is subject to the KCCP and, as a result, KORA is subject to the rule set forth in K.S.A. 22-2102. And because the Kansas Legislature did not expressly include language in KORA stating that KORA applies to municipal court convictions, Adem argues he is not required to register.

The majority is not persuaded by the underlying premise upon which Adem's argument is based:  that KORA is subject to the KCCP. The majority acknowledges that the KCCP is set forth in Chapter 22 of the Kansas Statutes Annotated and that KORA is also located within Chapter 22. But the majority finds that such placement was "an accident of the Revisor's editorial discretion" and concludes that KORA is "'an isolated outpost in its current location within our statute books—an island of civil law surrounded by a sea of criminal procedure.'" Slip op. at 8. In support of this conclusion, the majority notes there is no language in KORA that expressly states it is to be considered part of and supplemental to the KCCP. The majority then cites six statutes in Chapter 22 that do include this language. The majority concludes these six statutes demonstrate that the

15

Legislature knows how to express its intent when new provisions are to be considered part of the KCCP.

The majority's analysis is flawed. Although I readily concede the six statutes cited by the majority expressly state they "shall be a part of and supplemental to the code of criminal procedure," there are more than a hundred statutory provisions that the Legislature has enacted, revised, or supplemented since 1970 that *do not* include that language but are clearly subject to KCCP procedures. For example, K.S.A. 2020 Supp. 22-2202 is entitled "Definitions" and sets forth 20 definitions. The statute does not identify these definitions as ones "used in this code" and does not state they "shall be a part of and supplemental to the code of criminal procedure," which is the language the majority deems conclusive in determining whether the Legislature intended the statute or new provisions of the statute to be a part of the KCCP. Although there is no language in this definitional statute indicating that it is part of the KCCP, it is undisputed that the definitions clearly are part and parcel of the criminal procedure code.

The majority's analysis also is inconsistent with our precedent. K.S.A. 22-2103 provides the "[KCCP's] provisions shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." In *State v. Marinelli*, 307 Kan. 768, 787-88, 415 P.3d 405 (2018), we held that K.S.A. 2017 Supp. 22-3602(a) confers jurisdiction on appellate courts to review KORA challenges. K.S.A. 2017 Supp. 22-3602 does not state that it "shall be a part of and supplemental to the code of criminal procedure" and does not include any other language indicating that it is part of the KCCP. Nevertheless, one of the main reasons we reached the conclusion we did in *Marinelli* was because taking up KORA issues on appeal would be consistent with the principles outlined in K.S.A. 22-2103 of the KCCP. 307 Kan. at 787-88. To reach this conclusion, we necessarily decided that important KCCP principles regarding simplicity in procedure and fairness in administering KCCP provisions applied when determining

16

appellate jurisdiction for KORA-related issues. Finding KORA to be "an island of civil law surrounded by a sea of criminal procedure" that is independent from the KCCP appears to undermine and contradict our rationale in *Marinelli*, perhaps even calling into question whether we can rely on K.S.A. 22-3602(a) to take up appeals regarding KORA determinations in the future.

In a separate analysis to support its conclusion that KORA is "'an island of civil law surrounded by a sea of criminal procedure'" and not subject to the KCCP, the majority notes that our caselaw "consistently holds the Legislature intended KORA to be a civil regulatory scheme to promote public safety that is nonpunitive" Slip op. at 10. I am not persuaded by this analysis. Although this court has found KORA is a nonpunitive civil regulatory scheme, we never have ruled that the Kansas Rules of Civil Procedure (KRCP) govern KORA issues. With the exception of registration requirements for persons found to be a sexually violent predator under the civil commitment statutory scheme set forth in K.S.A. 59-29a01 et seq., KORA never arises in civil proceedings—it is triggered only upon a criminal conviction. And even in civil commitment Sexually Violent Predator Act cases, there always is an underlying criminal proceeding. Yet, the majority suggests that KORA is separate from the KCCP, the procedure which governs all criminal proceedings in every Kansas state court. If this were true, KORA truly would be entirely on an island of its own, governed by neither the KRCP nor the KCCP.

Common sense dictates that KORA is a subset of the KCCP. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018) ("[J]udicial interpretation must be reasonable and sensible to effectuate the legislative design and the true intent of the law."). Criminal convictions arise in criminal cases governed explicitly by the KCCP. In the context of criminal proceedings, KORA would not be triggered but for a certain registrable criminal conviction. Without these convictions—and in essence, without the KCCP to govern those criminal proceedings—KORA could not exist. As discussed above, this court

17

expressly has found that offenders can appeal KORA registration requirements per K.S.A. 2020 Supp. 22-3602(a), a statute which controls criminal appellate jurisdiction and certain procedures. KORA does not provide for any such appellate procedure and can only be appealed via the KCCP. Although K.S.A. 2020 Supp. 22-4903(c)(1)—a statutory provision within KORA—provides that failure to register results in felony charges, KORA does not provide any separate procedure for such violations. Rather, it once again falls back on the KCCP to provide the procedure for criminal prosecutions of KORA violations. If KORA truly were on an island of its own, the Kansas Legislature would have provided more detailed procedures for these proceedings. It also would seem that KORA would have separate procedural requirements for handling appeals of KORA designations stemming from municipal court convictions. There is no system in KORA providing guidance as to how this procedure should and would play out. For these reasons, I would find the Legislature intended KORA to be a subset of the KCCP.

Having concluded KORA is a subset of the KCCP, I necessarily would find that the KORA provision requiring registration for comparable convictions does not apply to municipal court convictions. The benchmark for this analysis is legislative intent if it can be ascertained. *Keel*, 302 Kan. at 572.

The language of K.S.A. 22-2102 is clear and unambiguous: the KCCP's provisions "shall have application to proceedings in police and municipal courts *only when specifically provided by law*." (Emphasis added.) The Legislature makes no mention of municipal court proceedings in any section of KORA. In sharp contrast, the Legislature expressly made certain sections of the KCCP applicable to municipal court proceedings. See, e.g., K.S.A. 22-2408 (regarding notice to appear procedures in district court proceedings and noting these procedures do not apply in municipal court cases because municipal courts follow their own procedures); K.S.A. 22-2601 (providing that district courts have exclusive jurisdiction to try all felony cases and other criminal cases

18

arising under the statute, except as explicitly provided in the municipal court procedure code); K.S.A. 22-3404 (indicating that misdemeanor trials in municipal court shall be to the court only and not before a jury); K.S.A. 2020 Supp. 22-3609 (providing a specific procedure for appeals from municipal court to district court); K.S.A. 22-3610 (providing appeals of municipal court convictions shall be tried de novo before the district court with limited exceptions); K.S.A. 22-3611 (providing a judgment procedure following trials de novo to the district court); K.S.A. 22-4504 (noting that indigent defendants are appointed counsel in district court proceedings and specifically cross-referencing the municipal court procedure code for counsel appointment procedures in municipal court proceedings). The Legislature has shown it knows how to express its intent to make certain sections of the KCCP applicable to municipal court proceedings.

Although acknowledging that the Legislature makes no mention of municipal court proceedings in any section of KORA, the majority finds that the plain language of K.S.A. 2020 Supp. 22-4902(b)(7)'s comparability provision trumps the issue of legislative intent. The majority claims its analysis relies on the plain language of the statute, but it actually relies on an *ambiguity* created by (1) the Legislature's mandate that the KCCP only applies to municipal convictions when specifically provided and the absence of language in KORA stating it applies to municipal convictions, and (2) the existence of KORA's comparability provision. "When faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute's passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *State v. Quested*, 302 Kan. 262, 268, 352 P.3d 553 (2015).

As the majority points out, the ordinance of conviction here—Shawnee Municipal Code § 9.01.010—was adopted verbatim from the Uniform Public Offense Code for

19

Kansas Cities § 3.2.1 (36th ed. 2020). Significantly, the following editor's note is contained in UPOC § 3.2.1:

> "Sec. 3.2.1. Sexual Battery.

> "(a) Sexual battery is the touching of a victim who is not the spouse of the offender, who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another.

> "(b) Sexual battery is a Class A violation. (K.S.A. 21-5505)
>> "{Editor's note:  Municipal courts are not a court of record and therefore, a conviction for this section in municipal court will not subject the defendant to registering as a sexual offender pursuant to K.S.A. 22-4902(b)(5). See *State v. Adams*, No. 114,276, (Kan. App. August 26, 2016) Unpublished opinion.}"

In *State v. Adams*, No. 114,276, 2016 WL 4499520 (Kan. App. 2016) (unpublished opinion), a Court of Appeals panel took up an equal protection claim in which the criminal defendant argued that he should not be required to register for a state sexual battery conviction because those convicted in municipal court of local sexual battery ordinances were not required to do so. The panel declined to reach this ultimate question. But the panel acknowledged the State's argument justifying why registration is required for convictions in state court but not required for convictions in municipal court. First, the State argued that a municipal court is not a court of record. The State also argued that requiring registration for municipal court convictions of sexual battery would place an undue burden on local sheriff's departments because there would be a dramatic increase in registrants. 2016 WL 4499520, at *3.

The State's concerns in *Adams* are indeed valid. Not only is there no indication from the Legislature that a municipal court conviction for certain sex offenses triggers

20

KORA's registration requirements, but there also is no indication that notifying offenders in municipal court of those requirements has ever been a practice. We are required to construe statutes in such a way as to avoid unreasonable results. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012). Applying KORA's comparability provision to municipal court proceedings in the absence of an express provision authorizing its application appears unreasonable. Municipal court proceedings are inherently different from district court proceedings. In municipal court proceedings, criminal defendants are charged pursuant to a municipal ordinance. K.S.A. 12-4201. These defendants are not afforded much of the same constitutional rights that are afforded their counterparts in district court proceedings. For example, municipal courts are of limited jurisdiction and are unable to hear most felony matters. See K.S.A. 2020 Supp. 12-4104(a); K.S.A. 22-2601. Municipal courts do not have the same powers as a district court, e.g., municipal courts cannot issue search warrants. See K.S.A. 2020 Supp. 12-4104(b). Municipal court judges are not required to be attorneys. See K.S.A. 12-4105. Municipal defendants are not entitled to jury trials, and they are not entitled to appointed counsel unless they are facing jail time. See K.S.A. 12-4405; K.S.A. 12-4502. Furthermore, municipal courts are not courts of record. *State v. Hughes*, 290 Kan. 159, 172, 224 P.3d 1149 (2010) (recognizing that "municipal courts are not courts of record").

Requiring registration for municipal convictions also creates a heavy burden on courts and registering law enforcement agencies across the state. KORA is explicitly retroactive in its application, so all individuals convicted of a triggering comparable offense in any municipal court across the country would be required to register now. KORA is retroactive in application back to 1994, meaning that the municipal courts will be required to provide notice of a duty to register to all individuals who previously were convicted of a comparable triggering offense in Kansas municipal courts and municipal and city courts across the country. To accomplish this, municipal courts and district

21

courts across the state would be responsible for deciding, on a case-by-case basis, which municipal convictions constitute a "comparable" triggering offense.

What is more, there is a fairness aspect to this calculation. In other words, if KORA's comparability provision applies to certain municipal court convictions, most of which will be misdemeanor convictions, offenders who violate KORA provisions will be subject to felony charges and prison time. In all cases, a municipal court offender who violates KORA will undoubtedly face more severe penalties that will impact their criminal history score and possible prison time. These issues cannot be ignored when determining the Kansas Legislature's intent in this case because they lead to very difficult and confusing situations that courts and sheriffs' offices across the state will be left to sort through.

Moreover, the legislative history strongly suggests the Kansas Legislature did not intend for KORA to apply to municipal court convictions. Specifically, we look to H.B. 2568, which was introduced in 2012 and proposed several amendments to KORA. See H.B. 2568 (2012). When the bill was first introduced, it proposed adding specific language to K.S.A. 22-4902 and elsewhere in KORA to establish that KORA was to expressly apply to certain municipal court convictions. For example, proposed section 1 would include in its definition of sex offender the following:

> "[A]ny person who . . . has been convicted of an offense ~~in effect at any time prior to July 1, 2011,~~ that is comparable to any crime defined in this subsection, ~~or~~ any out of state conviction *or any municipal conviction* for an offense that under the laws of this state would be an offense defined in this subsection." See H.B. 2568, § 1, (b)(6) (as introduced Jan. 27, 2012),
> http://www.kslegislature.org/li_2012/b2011_12/measures/documents/hb2568_00_0000.pdf.

22

Section 1 also expressly provided that certain out-of-state municipal convictions would trigger registration requirements as a violent or drug offender. See H.B. 2568, § 1 (b)(6), (g) (as introduced Jan. 27, 2012), http://www.kslegislature.org/li_2012/b2011_12/measures/documents/hb2568_00_0000.pdf. And section 7 expressly included proposed language that no offender who is required to register can seek relief from those registration requirements, including any person with "any out of state or municipal conviction or adjudication for an offense that would require registration" pursuant to KORA. See H.B. 2568 § 7 (as introduced Jan. 27, 2012), http://www.kslegislature.org/li_2012/b2011_12/measures/documents/hb2568_00_0000.pdf.

H.B. 2568 was sent first to the House Committee on Corrections and Juvenile Justice. See H.B. 2568, Bill History, Kansas Legislature Website, http://www.kslegislature.org/li_2012/b2011_12/measures/hb2568/. At a committee hearing on the bill on February 7, 2012, Nicole Dekat with the Kansas Bureau of Investigation (KBI) and the Offender Registration Working Group (ORWG) testified in support of the proposed amendments. Specifically, she noted that the KBI and the ORWG sought explicit amendments to KORA that would "[r]equire registration of municipal convictions for sex, violent and drug offenses." Hearing on H.B. 2568 Before the H. Comm. on Corr. and Juv. Just. (February 7, 2012) (statement of Nicole Dekat).

Significantly, Jennifer Roth with the Kansas Association of Criminal Defense Lawyers testified in opposition to the bill:

"HB 2568 adds municipal court convictions as qualifying offenses—and does so retroactively. HB 2568 adds to the definitions of sex offender, violent offender and drug offender: 'has been convicted of an offense . . . that is comparable to any crime defined

23

in this subsection, or any out of state conviction or any municipal conviction for an offense that under the laws of this state would be an offense defined in this subsection.'

"Municipal courts in Kansas are not courts of record (meaning there is no court reporter making a record of everything said by witnesses, the parties, the judge, etc.). Defendants are not entitled to jury trials. In fact, defendants are not entitled to appointed counsel unless they are at risk of jail time. Even when defendants are at risk of jail time (or not), they often sign waivers of their right to counsel. According to the Kansas Judicial Branch's website, municipal court judges can be non-lawyers.

"Without researching all municipal courts in Kansas (and the other 49 states), it is impossible to know all of the offenses handled in those courts across the nation. These so-called 'minor offenses' could result in someone being ordered to register for a minimum of 15 years and subject to a severity level 6/5/3 person felony if they don't. And it is retroactive. This provision presents a number of constitutional issues:  due process, Ex Post Facto, right to counsel, cruel and unusual punishment, etc." Hearing on H.B. 2568 Before the H. Comm. on Corr. and Juv. Just. (February 7, 2012) (statement of Jennifer Roth, at 1).

On February 15, 2012, the House Committee on Corrections and Juvenile Justice took up several proposed revisions to H.B. 2568. A representative from the Kansas Office of the Revisor of Statutes explained balloon amendments to H.B. 2568 proposed by the municipal group. See Minutes, Hearing on H.B. 2568 before the H. Comm. on Corr. and Juv. Just. (February 15, 2012), at 3-4, http://www.kslegislature.org/li_2012/b2011_12/committees/resources/ctte_h_corr_juv_ju s_1_20120215_min.pdf. The municipal group's proposed balloon amendments expressly struck every reference to municipal court convictions in H.B. 2568. See H.B. 2568 (proposed amendment Feb. 15, 2012), http://www.kslegislature.org/li_2012/b2011_12/committees/misc/ctte_h_corr_juv_jus_1_ 20120215_08_other.pdf. The committee ultimately adopted the municipal group's

balloon amendments as proposed. See Minutes, Hearing on H.B. 2568 before the H. Comm. on Corr. and Juv. Just. (February 15, 2012), at 4, http://www.kslegislature.org/li_2012/b2011_12/committees/resources/ctte_h_corr_juv_jus_1_20120215_min.pdf. H.B. 2568 as amended passed out of the committee and unanimously passed the House. H.B. 2568 was then sent to the Senate, where the bill passed out of the Committee on Judiciary and eventually was passed by the Senate. H.B. 2568—without any reference to municipal court convictions—and was signed into law on May 25, 2012. See H.B. 2568, Bill History, Kansas Legislature Website http://www.kslegislature.org/li_2012/b2011_12/measures/hb2568/. Although it has been amended many times since 2011, KORA still makes no express reference to municipal court convictions.

In sum, I would find that KORA is subject to the KCCP based on the clear and unambiguous language of K.S.A. 22-2102 and—in the absence of the Legislature specifically providing otherwise—that the KORA comparability provision does not apply to municipal court convictions. But if these two provisions create an ambiguity, I would then rely on the legislative history, the purpose to be accomplished, the nature of municipal proceedings, and the expansive impact of construing KORA to require retroactive registration back to 1994 for any person who has committed a triggering municipal court offense in Kansas municipal courts and municipal and city courts across the country, to conclude the Kansas Legislature did not intend for KORA to apply to municipal court convictions. For these reasons, I would conclude Adem is not required to register for his municipal court conviction of sexual battery under KORA's comparability provision.

ROSEN, J., joins the foregoing dissenting opinion.

25